BARBARA SWIFT & others[1] vs. AMERICAN MUTUAL INSURANCE
COMPANY OF BOSTON.

Hampden.    January 7, 1987. — March 9, 1987.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & NOLAN, JJ.

*Negligence,* Insurer, Safety inspection. *Actionable Tort. Workmen's Com-
pensation Act,* Insurer, Action against third person.

The wife and minor children of an employee who became ill as a result of
unsafe working conditions were not entitled to recover damages from
his employer's workmen's compensation insurer for loss of the employ-
ee's companionship and society, on a claim that the insurer had been
negligent in its performance of voluntary safety inspections of the em-
ployer's premises and in its failure to warn the employee of the unsafe
conditions. [375-378]

CIVIL ACTION commenced in the Superior Court Department
on May 8, 1981.

A motion for summary judgment was heard by *Raymond R.
Cross,* J.

Leave to prosecute an interlocutory appeal was allowed in
the Appeals Court by *Charlotte Anne Perretta,* J.

The Supreme Judicial Court transferred the case on its own
initiative.

*Janice J. Cook* for American Mutual Insurance Company
of Boston.

*Eric P. Finamore (Thomas E. Cargill, Jr., & Kerry Paul
Choi* with him) for the plaintiffs.

ABRAMS, J. At issue in this case is whether the family of
an employee may maintain an action against the employer's
workers' compensation insurer for the insurer's failure to warn

---

[1] Robert W. Swift, Jr., and Tracey Lee Swift, the minor children of
Robert W. Swift.

the employee of unsafe working conditions. The plaintiffs —
the wife and minor children of Robert W. Swift, a former
employee[2] of Art Cement Products Co., Inc. (Art Cement)[3] —
filed an amended complaint seeking recovery from the defend-
ant, American Mutual Insurance Company of Boston, the lia-
bility insurer of Art Cement, for the loss of Swift's society
and companionship. The plaintiffs alleged that the defendant's
negligent performance of safety inspections and its failure to
warn[4] Art Cement and its employees of dangers discovered in
the inspections contributed to Robert Swift's injuries and to
the plaintiffs' resulting loss of companionship. The defendant
filed a motion for summary judgment on the claims against it
with a supporting affidavit of Robert A. Sevigny, the defend-
ant's manager of special litigation. See Mass. R. Civ. P. 56,
365 Mass. 824 (1974). After a hearing on the matter, the trial

---

[2] The plaintiffs alleged in their unverified complaint that Swift was an
employee of Art Cement but they filed no affidavit establishing this fact.
The defendant, in its answer and supporting affidavit does not concede that
Swift was an employee of Art Cement Products Co., Inc. Because the
parties do not contest the fact that Swift was an employee of Art Cement
Products Co., Inc., we shall assume that fact to be established.

We repeat that "[w]hen a motion for summary judgment is made and
supported . . ., an adverse party may not rest upon the mere allegations or
denials of his pleading, but his response, by affidavits or as otherwise
provided in this rule, must set forth specific facts showing that there is a
genuine issue for trial. If he does not so respond, summary judgment, if
appropriate, shall be entered against him." Mass. R. Civ. P. 56 (e), 365
Mass. 825 (1974). See *Godbout* v. *Cousens,* 396 Mass. 254, 261-263
(1985).

[3] The plaintiffs sought recovery from Art Cement on loss of consortium
and society claims for failure to provide safe working conditions and for
failure to provide adequate warnings to the employee concerning the dangers
of silica dust. There is no issue before us on the plaintiffs' claims against
Art Cement. These claims arose prior to the 1985 amendment to G. L. c. 152.
See G. L. c. 152, § 24, as amended through St. 1985, c. 572, § 35.

[4] In their amended complaint, the plaintiffs allege both negligent inspec-
tion and failure to warn. They, however, assert in their brief that the essence
of their complaint "is not that the insurer negligently inspected or failed to
inspect the premises of the employer . . . nor that the employer was negli-
gently advised concerning the potential for injury . . . [but that] the insurer,
following its performance of inspection and advisory services, breached the
duty of reasonable care which it owed to employees and their families by
failing to warn them of the dangerous condition or to take other actions to
safeguard their well being."

judge denied the motion. The defendant sought leave from a single justice of the Appeals Court to appeal. See G. L. c. 231, § 118, first par. (1984 ed.). The single justice granted leave to appeal.[5] We transferred the case to this court on our own motion. We conclude that the defendant insurer is entitled to summary judgment.

The facts as described in the complaint and the defendant's affidavit may be summarized as follows. Robert Swift was a sandblaster for Art Cement from September, 1965, until April, 1980. According to the complaint, Swift developed silicosis during the period as a result of unsafe working conditions exposing him to silica dust.

From approximately April, 1975, to April, 1980, the defendant provided workers' compensation coverage and employer's liability coverage to Art Cement. During that period, the defendant inspected the premises of Art Cement. The inspections and advisory services performed by the defendant were furnished as an "incident to insurance." The inspections "were performed with the express understanding that neither the visits by any representative of American Mutual Liability Insurance Company nor American Mutual Insurance Company of Boston, under the terms of the policy, constituted an undertaking to determine or warrant that the premises and operations of Art Cement Products Co., Inc., were safe."[6]

The defendant moved for summary judgment based on our decision in *Matthews* v. *Liberty Mut. Ins. Co.,* 354 Mass. 470 (1968). The *Matthews* case held that the administratrix of an employee's estate could not recover against the workers' compensation insurer for its voluntary inspections because the insurer did not owe a duty to the employee apart from its policy

---

[5] The plaintiffs' argument that the single justice of the Appeals Court improperly granted leave for appeal is without merit. The single justice had the authority to allow appellate review of the denial of the motion for summary judgment. See *CUNA Mut. Ins. Soc'y* v. *Attorney Gen.,* 380 Mass. 539, 540 (1980); G. L. c. 231, § 118, first par. (1984 ed.). The single justice reasonably and correctly concluded that an appeal on this single issue would facilitate the administration of justice.

[6] Neither party placed the insurance policy in the record. Because the policy is not before us, we accept the wording of the affidavit.

of insurance. The trial judge ruled that this case is distinguishable from *Matthews* because the rights of the plaintiffs are "not dependent upon the rights of [the] husband-father but [are] independent in nature." Thus, he concluded that summary judgment was inappropriate. We do not agree. The issue is not the status of the cause of action as dependent or independent but whether the defendant owed a duty to the plaintiffs. See *Flattery* v. *Gregory,* 397 Mass. 143, 148 (1986).

The *Matthews* case is premised on the theory that the "Workmen's Compensation Act does not have as a purpose that the insurer be sued as a third party for performance of a function which furthers the goals of the entire compensation program."[7] *Matthews, supra* at 473. The policy behind the decision is clear: liability is not to be imposed on insurers for voluntary safety inspections because such inspections are critical to the well-being of workers and their families. *Id.* at 473.

Further, the statute's purposes include eliminating or reducing industrial hazards as well as compensating injured workers. "[The act] was a humanitarian measure enacted in response to a strong public sentiment that the remedies afforded by actions of tort at common law and under the employers' liability act had failed to *accomplish that measure of protection against injuries* and of relief in case of accident which it was believed should be afforded to the workman" (emphasis supplied). *Young* v. *Duncan,* 218 Mass. 346, 349 (1914). If we were to adopt the plaintiffs' position, insurers simply could stop performing voluntary safety inspections to avoid liability. The result would be no accident prevention program by insurers who have the resources to do so. We think that the goal of increased safety is advanced by allowing insurers to perform voluntary safety inspections without fear of tort liability. Other

---

[7] The plaintiffs' claim is reminiscent of the dual capacity claim made in *Longever* v. *Revere Copper & Brass Inc.,* 381 Mass. 221 (1980). Cf. *Douglas* v. *E. & J. Gallo Winery,* 69 Cal. App. 3d 103 (1977). In *Longever,* we rejected a suit against an employer based on the theory that the employer acted as manufacturer as well as employer. We also reject the argument that the insurer acts in a dual capacity when it performs voluntary safety inspections as an incident of its insurance business.

courts also have declined to impose liability on workers' compensation insurance carriers for voluntary safety inspections. See, e.g., *Kifer* v. *Liberty Mut. Ins. Co.*, 777 F.2d 1325, 1336 (8th Cir. 1985); *State Compensation Ins. Fund* v. *Superior Court*, 237 Cal. App. 2d 416, 425 (1965); *Brown* v. *Travelers Ins. Co.*, 434 Pa. 507, 515 (1969).[8] See generally 2A A. Larson, Workmen's Compensation §§ 72.90-72.98 (1986).

Because accident prevention programs by workers' compensation insurers as part of their insurance business does not give rise to their third-party liability, we conclude that the insurer is not liable to the plaintiffs for its voluntary inspections, even if we assume that the voluntary inspections were deficient. In sum, the insurer is not liable other than under its contract of insurance to provide workers' compensation. Therefore, the judge should have granted the defendant's motion for summary judgment.[9] The order denying the motion for summary judg-

---

[8] We recognize that the statutes in other States differ but the policy reasons underlying these decisions not to impose liability for voluntary safety inspections are similar. For example, in *Kifer, supra,* the United States Court of Appeals for the Eighth Circuit explained that the reasons for not imposing liability on insurers included "the potential for unlimited liability of workers' compensation 'carriers . . . [and] the abandonment of many safety programs currently undertaken by workers' compensation carriers." *Kifer, supra* at 1334. The court concluded that "[t]he mere threat, much less the actual imposition, of tort liability arising from these voluntary safety programs could ultimately result in the abandonment of many of them." *Id.* at 1336.

[9] The insurer also relies on G. L. c. 143, § 16A (1984 ed.). The judge concluded that this section was limited by its terms and thus was inapplicable. The statute provides: "The furnishing of, or failure to furnish, safety inspection or advisory services intended to reduce the likelihood of injury, death or loss shall not subject an insurer, its agent or employee undertaking to perform such services as an incident to insurance, to liability for damages from injury, death or loss occurring as a result of any act or omission in the course of such services. This provision shall not apply in the event the active negligence of the insurer, its agent or employee created the condition which was the proximate cause of injury, death or loss." The statute represents a legislative determination that an insurer is not to be penalized for making or not making a voluntary safety inspection for its own benefit and as an incident of its insurance business. That determination essentially expresses a policy determination analogous to that expressed in *Matthews*. An insurer is not to be penalized for collecting data by conducting voluntary

ment is reversed, and the case is remanded for entry of summary judgment in favor of the defendant.

*So ordered.*

---

safety inspections because such inspections ultimately benefit the public, the workers, their families, the employer, and the insurer.