EDMUND NARINE *vs.* JOHN E. POWERS
(and a companion case[1]).

Middlesex.  May 5, 1987. — June 30, 1987.

Present: WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Governmental Immunity. Public Officer. Actionable Tort. Negligence*, Public officer.

A tort action against a public officer for injuries occurring before the operative date of St. 1978, c. 1512, a statute which substantially revised the law concerning the tort liability of public employees and public officers, was governed by common law principles permitting recovery only for misfeasance in the performance of a ministerial act. [346-347]

At the trial of a tort action governed by common law principles applicable before August 16, 1977, the operative date of St. 1978, c. 512, in which the plaintiffs sought damages for injuries sustained when a bomb exploded in the Suffolk County Courthouse, there was no evidence warranting a finding that the defendant, a member of the commission established under St. 1939, c. 383, § 1, for "[t]he care, custody and control" of the courthouse, had a ministerial duty, based on procedures established by the commission, to warn the public of the receipt of a bomb threat or, even assuming that he had such a duty, that the defendant's conduct amounted to misfeasance, as distinct from mere inaction. [347-348]

CIVIL ACTIONS commenced in the Superior Court on March 23, 1977, and May 20, 1977, respectively.

The cases were consolidated for trial and were tried before *Joseph S. Mitchell, Jr.*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Carmen L. Durso* (*Mark F. Itzkowitz* with him) for the plaintiffs.

[1] Laura Feeney, Neil Feeney, Jeremiah Feeney, Floyd Lewis, Mildred Lewis, and Charles A. Saitta, Jr. *vs.* John E. Powers. All the plaintiffs except Mildred Lewis (who asserts a claim of loss of consortium) were injured in the explosion.

*Mary Ellen Nolan & Douglas I. Louison*, Assistant Corporation Counsel of the city of Boston, for the defendant.

WILKINS, J.   At 9:13 A.M. on April 22, 1976, a bomb exploded in the office of the Commissioner of Probation on the second floor of the Suffolk County Courthouse in Boston. These companion cases, which were tried together, were brought as a result of injuries sustained from the explosion. The defendant appeals from judgments entered following jury verdicts. We transferred the appeals here on our own motion. The only issue we decide is whether the evidence required the allowance of Powers's motions for a directed verdict and for judgment notwithstanding the verdict.[2]

The Suffolk County Courthouse Commission has "[t]he care, custody and control of the Suffolk county court house." St. 1939, c. 383, § 1. At the time of the explosion, the commissioners were Thomas S. Eisenstadt, an ex officio member as the sheriff of Suffolk County; Albert Sherman, an appointee of the Governor and chairman of the commission; and John E. Powers, an appointee of the Chief Justice of the Supreme Judicial Court, who was serving concurrently as clerk of the Supreme Judicial Court for the county of Suffolk and of the Appeals Court.

We summarize the evidence most favorable to the plaintiffs, which is the relevant evidence to consider in passing on a

---

[2] The Narine complaint named as defendants the "Suffolk County Court House Commission"; Albert Sherman, John E. Powers, and Thomas S. Eisenstadt; the Commonwealth; and the city of Boston. The claims against the Commonwealth, the city, the commission, and Eisenstadt were dismissed before trial. Narine has not pursued any appeal as to the dismissal of these defendants. The jury returned verdicts in favor of Sherman. In the Narine case we are concerned, therefore, only with Powers's appeal following a jury verdict against him.

The defendants named in the second amended complaint on which the Feeney action was tried were Eisenstadt, Powers, Sherman, and Angus Griffin. The city was named at an earlier stage, but its dismissal as a defendant was upheld in *Feeney* v. *Boston*, 13 Mass. App. Ct. 1004 (1982). The claims against Eisenstadt and Griffin were dismissed on summary judgment. The jury returned verdicts for Sherman, and judgment was entered in his favor. We are concerned at this time only with Powers's appeal. Certain counts of the amended complaint were severed and not tried. Separate judgments were entered under Mass. R. Civ. P. 54 (b), 365 Mass. 820 (1974), on the counts against Powers, thus permitting his appeal to be considered before all allegations of the complaint have been disposed of.

motion for a directed verdict or a motion for a judgment not-withstanding the verdict. *Forlano* v. *Hughes*, 393 Mass. 502, 504 (1984).

At 8:53 A.M., twenty minutes before the bomb went off, an operator at the courthouse's main switchboard received a call from a woman who identified herself as a member of a group (whose name the operator did not fully understand). The caller said a bomb would explode in the courthouse in twenty minutes, but she would not say where. Powers was the only commissioner in the building. Sherman was notified of the bomb threat by telephone. Eisenstadt did not learn of the threat until after the bomb exploded. After Sherman was notified, the Boston police department bomb squad was notified. It was then 9:03 A.M. In the ensuing minutes, two officers rushed to the courthouse, but the bomb exploded as they entered the courthouse lobby. The building superintendent, Angus Griffin, had also been notified; he went to the so-called van room (or garage) of the courthouse to await the bomb squad. He notified Powers about 9 A.M. The public continued to enter the building. Each injured plaintiff entered the courthouse after the bomb threat was received, and all but one entered after 9 A.M. No warning of the threat was given, by signs or otherwise, to the public. Some employees started to leave the courthouse.[3]

Powers testified that his duty was to notify the Chief Justice of this court and to tell his own assistant, James Monahan, who, in turn, was to notify departments on the upper floors of the courthouse. He also testified that he was first appointed a commissioner because "the court at that time was looking for a tenant commissioner, one who was going to be there."[4]

---

[3] Narine was in the probation office waiting for a certificate when the bomb exploded. He lost a leg in the explosion and sustained other serious injuries. The jury awarded Narine (apart from interest) $1,535,000. The explosion tore a hole in Floyd Lewis's leg. The jury awarded him $75,000, and his wife $20,000. The Feeneys were standing outside the probation office. Each received physical injuries. The jury awarded them damages for physical injury, for loss of consortium and medical expenses, totaling $26,500. Charles Saitta, Jr., was hurled into a wall by the blast and was carried out of the courthouse. The jury awarded him $2,000.

[4] There was other evidence that would have warranted a finding that Powers and the other commissioners were negligent. As will be seen,

Because the explosion occurred before the effective date of St. 1978, c. 512 (see § 16), which substantially revised the law (G. L. c. 258) concerning the tort liability of public employees and public officers, we must, as the plaintiffs acknowledge, deal with the liability of public employees under our common law. See *Vaughan* v. *Commonwealth*, 377 Mass. 914, 915 (1979). Particularly we must accept and apply distinctions that the common law made between misfeasance and nonfeasance of public officers, distinctions which in many instances, as we said in *Whitney* v. *Worcester*, 373 Mass. 208, 221 (1977), "have no real connection with sound reasoning or policy."[5] We must also apply the common law distinction between (a) ministerial acts, for which a public officer could be liable, and (b) nonministerial or discretionary acts, for which (barring bad faith, malice, or corruption) a public officer could not be liable. *Gildea* v. *Ellershaw*, 363 Mass. 800, 820 (1973).

The standard of liability can be simply stated, although its application is not always so simple. Powers could be liable only for the consequences of his own misfeasance in connection with a ministerial matter. *Fulgoni* v. *Johnston*, 302 Mass. 421, 423 (1939). Misfeasance is the negligent or improper doing of an act (*Trum* v. *Paxton*, 329 Mass. 434, 438 [1952]), as

---

however, the test for liability is not that broad. The testimony of the plaintiffs' expert, largely unobjected to, presented theories in support of the commissioners' negligence and not theories focused on the test for liability appropriate to this case.

The expert testified that the commission should have had written procedures for handling bomb threats; one person should have been in charge; telephone operators should have had a priority list for giving notice of the threat; persons should not be permitted to decide whether to leave the threatened building; selective notification of particular people was bad; signs should have been put up outside the building warning of the threat; no one should have been allowed to enter the building; and Powers should have notified the public of the threat.

Assuming that some or all of these were negligent omissions, the risk of injury to persons such as the plaintiffs seems to have become a reasonably foreseeable consequence of at least some of these negligent omissions. In other words, but speaking only in general terms, on a negligence standard, proof of causation was not likely to be a problem for the plaintiffs.

[5] The new State tort claims act became effective as of the date of our *Whitney* opinion (August 16, 1977). St. 1978, c. 512, § 16.

opposed to nonfeasance, which involves the negligent failure or omission to act (*Trum* v. *Paxton, supra* at 438). A ministerial matter involves, for example, "the carrying out of previously established policies or plans." *Whitney* v. *Worcester, supra* at 218.

The plaintiffs explain their theory of Powers's liability in the following terms. Powers's ministerial duty was the duty to implement the commission's established bomb threat response procedure. They make no claim that Powers is liable for his role in formulating those procedures, plans which the plaintiffs assert (in effect as an aside, see n.4 above) were inadequate. They claim that the jury could infer that Powers's duties were broader than his testimony or other evidence explicitly showed because he was the only commissioner on the premises full time each day. The plaintiffs say that they challenge only what Powers did and not any action he should have taken. They say that as the "headquarters commissioner" he had particular duties and that he had the duty to give notification of the bomb threat to the other commissioners and to the public. The plaintiffs' argument continues that, because Powers gave notice to the Chief Justice of this court and to others on the upper floors of the courthouse in partial compliance with the established notification procedures, he was guilty of misfeasance in not notifying others according to what the plaintiffs say was the established plan.[6]

The plaintiffs' case fails for two reasons. First, there is no evidence that there was a procedure established by the commission which Powers failed to follow. Disbelief of Powers's testimony (or any other testimony) as to the scope of his duties under established procedures does not prove that there were additional procedures or what they were. In short, there is no evidence warranting a finding that Powers had any ministerial duty which he did not carry out. The plaintiffs make no claim that Powers had a ministerial duty based on other than allegedly established procedures. Second, there is no evidence warranting a finding of Powers's misfeasance in carrying out any

---

[6] They make no claim that Powers is liable for the acts of any subordinate.

ministerial duty. Our recent opinions, particularly, have taken a narrow view of what misfeasance is. See *Whitney* v. *Worcester*, 373 Mass. 208, 223 (1977) (ordering the minor handicapped plaintiff to leave a classroom, although his vision was known to be further impaired that day, and, after his injury, ordering him to stay in the classroom without obtaining immediate medical assistance were not acts of misfeasance); *Desmarais* v. *Wachusett Regional School Dist.*, 360 Mass. 591, 593 (1971) (ordering laboratory experiment to proceed without requiring student to wear safety glasses was "mere inaction" and not misfeasance). There is simply no showing of an affirmative, negligent act by Powers in giving notification of the bomb threat which in any way could have been a cause of harm to the plaintiffs. Even if we were to assume that Powers had a duty to notify more people than he did, his omission would have been a failure to act (nonfeasance).[7]

Under today's law, each plaintiff proving negligently caused injuries (as we think it is fair to say they did) would be entitled to recover up to $100,000 from the public employer, and the public employees would not be liable. G. L. c. 258, § 2 (1984 ed.). See *Irwin* v. *Ware*, 392 Mass. 745, 772-773 (1984). Our function cannot properly be to reconstitute the common law of the Commonwealth in this case after having declined to do so for many others caught up in the application of principles of governmental immunity. See *Vaughan* v. *Commonwealth*, 377 Mass. 914, 915 (1979); *Whitney* v. *Worcester*, 373 Mass. 208, 225-226 (1977).[8] We express no view whether the Legislature might lawfully authorize relief for the plaintiffs from public funds.

---

[7] The Appeals Court anticipated the result we reach in this case when the *Feeney* case was before it on appeal in 1982, saying, "It may be unlikely that the plaintiffs will be able to prove a set of facts entitling them to recovery under such a test [i.e., defendants' liability "only for their own acts of misfeasance in connection with ministerial matters"]. The allegations of the complaint constitute a distinctly strained attempt to phrase omissions in the language of misfeasance." *Feeney* v. *Boston*, 13 Mass. App. Ct. 1004, 1004-1005 (1982).

[8] In our *Whitney* opinion, we indicated that, if the Legislature did not act definitively as to the doctrine of municipal immunity by the conclusion of

The judgments for the plaintiffs are reversed. The verdicts for the plaintiffs are set aside. Judgment shall be entered for the defendant on all counts.

*So ordered.*

its 1978 session, we would abrogate the doctrine effective as of May 14, 1973, the date of our opinion in *Morash & Sons* v. *Commonwealth*, 363 Mass. 612 (1973). If, when it acted definitively, the Legislature had used May 14, 1973, as the effective date of revised G. L. c. 258, rather than the date of the *Whitney* opinion (August 16, 1977), these plaintiffs would have had the benefit of the new legislation.