ELLEN MATTINGLY, administratrix,[1] *vs.* ROBERT CASEY
& others[2].

Suffolk.    March 13, 1987. — July 14, 1987.

Present: BROWN, QUIRICO, & KASS, JJ.

*Governmental Immunity. Actionable Tort. Public Officer. Negligence,* Pub-
lic officer, School teacher. *Child Abuse.*

In a negligence action which was governed by the common law antedating
the Massachusetts Tort Claims Act, G. L. c. 258, and which arose from
the alleged failure of defendant public school employees "immediately
[to] report" a likely case of child abuse, as required by G. L. c. 119,
§ 51A, and the alleged failure of the defendant director of a local office
of the Department of Public Welfare to take steps to protect the child,
as required by G. L. c. 119, § 51B, the defendants' conduct constituted
nonfeasance, rather than misfeasance, and consequently the defendants
were not liable to the father of the child or to the administrator of the
child's estate. [455-456]

CIVIL ACTION commenced in the Superior Court on De-
cember 28, 1977.

The case was heard by *Elbert Tuttle,* J., on motions for
summary judgment.

*Elizabeth N. Mulvey* (*Ann Marie Maguire* with her) for the
plaintiff.

*Craig M. Brown* for Robert Casey & others.

*Francis G. Chase,* Assistant Attorney General, for Donald
Bowdoin.

*Anthony T. Tarricone* (*Frank C. Corso* with him) for Ruth
Davis.

---

[1] Of the estate of Rochelle Davis. Luther Davis, originally an additional
plaintiff, did not file an appeal.

[2] Rita Feeney, Arlene Libbon, and Donald Bowdoin. A complaint against
the Commonwealth was dismissed on motion at a relatively early stage of
the proceedings.

KASS, J. In what strikes us as a remarkable example of skewed legal thinking and abdication of personal responsibility, the father of a child whom the mother allegedly beat to death brought an action seeking $2,500,000 in damages from the child's school teacher, her school nurse, the school principal, and the director of the Brockton office of the Department of Public Welfare.[3] We affirm a judgment for the defendants entered upon the allowance of the defendants' motions for summary judgment. In our review of the case we have been greatly assisted by a detailed and carefully reasoned memorandum of decision by the motion judge.

We outline facts drawn from pleadings, interrogatories, and depositions. Rochelle Davis was eight years old when, on December 22, 1976, she allegedly suffered a beating at the hands of her mother, Ruth Davis, which rendered the child comatose and quadriplegic.* There was no reversal of Rochelle's neurological condition; she died six years later. Ruth and Luther Davis were the adoptive parents of Rochelle, who, ironically, had suffered abuse from her biological mother. Throughout all times material the Davises lived together.

On October 27, 1975, Rochelle appeared at the nurse's room in her school, apparently sent there by her classroom teacher, Arlene Libon (a defendant), who had observed bruises and swelling on the child's face. Rochelle explained that she had fallen from a tree. Rita Feeney, the nurse (a defendant), spoke with Mrs. Davis, who attributed the injury to a fall from a table and further explained that Rochelle frequently lost her balance.

Over the next fourteen months, school personnel observed sixteen instances of hematoma or cuts on Rochelle's face.

---

[3] As will appear later in the opinion, the child did not die until after her father, Luther Davis, initiated the action in her behalf, as well as his own. The administratrix was substituted when the child died.

* In 1982, the defendants, upon motion, were permitted to file a third-party complaint against Mrs. Davis. In her answer to that third-party complaint which appears in an addendum to a brief filed on her behalf, Mrs. Davis denies that she inflicted the ultimately fatal injuries upon Rochelle. There is in the record evidence, but not a definitive finding, that Mrs. Davis abused the child. Fresh bruises observed on Rochelle on December 22, 1976, when she was admitted to Children's Hospital, were attributed by Mrs. Davis to her efforts to awaken Rochelle from her coma.

These manifestations were reported to, and discussed with, Robert Casey, the school principal (a defendant). He, in turn, spoke with Mrs. Davis, who explained away the injuries much as she had to the school nurse. Mrs. Davis drove a bus for the Brockton school department.

On May 19, 1976, Rochelle came to school with a hematoma under her left eye. Asked about this, she said her mother had hit her. This was the first time Rochelle had tied a member of her family to her injuries. Feeney or Libon passed the information to Casey, who met with both parents. Mrs. Davis attributed the child's remarks to the circumstances that she had been abused before the Davises had adopted her, i.e., Rochelle thought along those lines. When Rochelle turned up in school on October 29, 1976, with a large hematoma under her left eye — there had been intervening incidents — the nurse filed a report in accordance with G. L. c. 119, § 51A, with the Brockton regional office of the Department of Public Welfare.[4]

Section 51A, as amended by St. 1975, c. 276, § 4, requires a school teacher or educational administrator who "shall have reasonable cause to believe that a child under the age of eighteen years is suffering serious physical or emotional injury resulting from abuse . . . immediately [to] report such condition to the department [of public welfare] . . . ." Any person required to make a report who fails so to do is subject to a fine. Persons required to make a report are exempt from civil or criminal action by reason of such a report. Section 51B, inserted by St. 1973, c. 1076, § 5, requires the department to "investigate and evaluate the information reported under [§ 51A)."[5] The department shall take "a child into immediate temporary custody if the department has reasonable cause to believe that the

_____

[4] By St. 1978, c. 552, § 10, protective services for children were made the responsibility of the Department of Social Services, which was created by that act. Section 28 of St. 1978, c. 552, provides that the "department" to which § 51A reports are made is the Department of Social Services.

[5] By reason of St. 1978, c. 131, and St. 1986, c. 478, if the department has reasonable cause to believe that the child is in immediate danger of further abuse, the department is to investigate and evaluate the case within twenty-four hours. In all cases, the department is to complete its evaluation within ten days.

removal of the child is necessary to protect him from further abuse or neglect."

The supervisor of the protective services unit of the Department of Public Welfare in Brockton was Donald Bowdoin. He placed the § 51A complaint about Rochelle into a file for future investigation. Reports from hospitals, doctors, and the police received the highest priority. Alas, the case lay unattended until Bowdoin received a further § 51A report from the Children's Hospital Medical Center on December 23, 1976, reporting the catastrophe of the previous day.

The gravamen of the action is that the classroom teacher, nurse, and school principal failed to comply with the mandate of § 51A "immediately [to] report" a likely case of child abuse; that this failure was negligent; and that their collective negligence was the proximate cause of the child's grievous injury. As to Bowdoin, the negligence asserted arises out of his failure to see to a prompt investigation, as § 51B requires, and to take steps to protect the child.

Necessarily, the acts out of which the action arises preceded the culminating event of December 22, 1976, and, thus, occurred prior to the date which would make the Massachusetts Tort Claims Act applicable. That date is August 16, 1977. See St. 1978, c. 512, § 16; *Dinsky* v. *Framingham*, 386 Mass. 801, 802 (1982). We are remitted, therefore, to the preexisting criteria for judging the liability of public servants: were they public officers and were their actions misfeasance or nonfeasance? Only misfeasance would be actionable. See *Trum* v. *Paxton*, 329 Mass. 434, 438-439 (1952); *Desmarais* v. *Wachusett Regional Sch. Dist.*, 360 Mass. 591, 593 (1971), cert. denied, 414 U.S. 859 (1973); *Whitney* v. *Worcester*, 373 Mass. 208, 213-214, 220-221 (1977); *Narine* v. *Powers*, 400 Mass. 343, 346-347 (1987); *O'Neill* v. *Mencher*, 21 Mass. App. Ct. 610, 612-613 (1986).

It was held in the *Desmarais* and *Whitney* cases that school teachers fall into the public officer category. The same need to exercise judgment and discretion which placed teachers in that classification applies to a school nurse and school principal. The facts of this case illustrate the point. The classroom teacher,

perceiving Rochelle's injuries, felt bound to consult the specialized knowledge of the school nurse, and the two, in turn, conferred with the principal. They needed to consider the gravity of the child's hurts, what they knew about her family, and what this portended. Section 51A does not require the reporting of every bruise; it requires reporting on the basis of indicators which give reasonable cause to believe that a child is being abused. That conclusion requires an element of judgment to separate an incident from a pattern, the trivial from the serious. See, however, *April K.* v. *Boston Children's Serv. Assn.,* 581 F.Supp. 711, 713 (D. Mass. 1984) (suspected instances of child abuse and neglect subsumed within the phrase "reasonable cause to believe"). Bowdoin was the supervisor of the protective services unit. His duties included assigning case workers and deciding the order of attention to be given to the cases which flowed into his office. The resources of that office were not unlimited and Bowdoin was obliged to make decisions about allocating them. His work, therefore, also required the exercise of discretion and judgment. He was a public officer.

Whatever the occasional difficulties in making the nonfeasance or misfeasance characterization, they are not present here. "[N]onfeasance is the omission of an act which a person ought to do, misfeasance is the improper doing of an act which a person might lawfully do." *Trum* v. *Paxton,* 329 Mass. at 438. *Whitney* v. *Worcester,* 373 Mass. at 220. *Narine* v. *Powers,* 400 Mass. at 346-347. Here the essence of the complaint is that the defendants did not do something which they ought to have done. The defendants, therefore, are not liable.

We intimate no view that the result in the case would be otherwise were the Massachusetts Tort Claims Act applicable. There are obvious problems of causation. The school defendants, however overhesitant they may have been (particularly in retrospect), reported the case two months before the critical event. More immediate investigation by the Department of Public Welfare would not inevitably have resulted in removing Rochelle from her family; there might have been an effort to work with the family. Whether more prompt action would have staved off disaster was, as the motion judge observed,

speculative. Having so said, we are also moved to observe, parenthetically, that it behooves persons whom § 51A charges with reporting obligations to adhere more faithfully than the school personnel did here to the duty imposed by the Legislature to report *immediately* to the Department of Social Services when there is as solid ground to think there has been child abuse as there was in this case. See *Hope* v. *Landau,* 21 Mass. App. Ct. 240, 242-243 (1985), *S.C.,* 398 Mass. 738 (1986). Nor was the department faithful to § 51B when it failed to make a prompt investigation. The statute requires that, even in the absence of signs of imminent danger, the department shall investigate and evaluate the information reported to it within seven days. G. L. c. 119, § 51B.

Although not a ground for decision, we think it appropriate to voice our distress about the bringing of what we consider to be a misbegotten action. Until the administratrix of the estate of Rochelle was substituted as the plaintiff, the father of the child, as a practical matter, was the plaintiff. It strikes us, as we suggested at the outset, as an unacceptable shifting of personal responsibility for a father, in daily contact with his family, even if he played no active part in the abuse of the child, to react passively to the tell-tale signs and then charge public officials with blindness and inaction. Compare *Commonwealth* v. *Cadwell,* 374 Mass. 308, 319 n.8 (1978); *Commonwealth* v. *Labbe,* 6 Mass. App. Ct. 73, 81-82 (Brown, J., concurring). As the motion judge observed, once the child died, maintenance of the action becomes still more astonishing. Any recovery, as matter of law, would normally devolve upon the parents (Rochelle, of course, died without issue, see G. L. c. 190, § 3[2]), the very persons whose violence and neglect caused the child's injury and death. See, however, limitations on the right of a wrongdoer to benefit on account of a death to which the wrongdoer contributed. *Arnold* v. *Jacobs,* 319 Mass. 130, 133 (1946). Newhall, Settlement of Estates § 229 (4th ed. 1958).

*Judgment affirmed.*