LYNETTE HAMEL[1] *vs.* FACTORY MUTUAL ENGINEERING
ASSOCIATION.

Middlesex. November 6, 1990. - December 26, 1990.

Present: WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Negligence*, Insurance company, Safety inspection. *Actionable Tort. Statute*, Construction.

In an action arising from an industrial accident in which the plaintiff claimed that the defendant insurers' negligence in inspecting the factory where her husband worked, and in making safety recommendations, proximately caused her husband's death, there was no error in allowing the defendant's motion for summary judgment on the ground that it was protected from liability under G. L. c. 143, § 16A, where the safety recommendations made by the defendant, while apparently not adequate to prevent the accident, did not increase any risk that already existed at the factory. [36-37]

CIVIL ACTION commenced in the Superior Court Department on March 8, 1982.

A motion for summary judgment was heard by *Catherine A. White*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Alan L. Cantor* for the plaintiff.

*Gerard R. Laurence* for the defendant.

ABRAMS, J. This case raises the question of the proper interpretation of the last sentence of G. L. c. 143, § 16A (1988 ed.).[2] The plaintiff claims that the defendant's negligence in

---

[1] Individually and as administratrix of the estate of Edward Hamel.

[2] General Laws c. 143, § 16A (1988 ed.), reads as follows: "The furnishing of, or failure to furnish, safety inspection or advisory services intended to reduce the likelihood of injury, death or loss shall not subject an insurer, its agent or employee undertaking to perform such services as an incident to insurance, to liability for damages from injury, death or loss occurring

inspecting the factory where her husband worked, and in making safety recommendations, proximately caused her husband's death. The defendant moved for summary judgment, claiming protection from liability under § 16A. A Superior Court judge allowed the motion and entered judgment for the defendant. We transferred the appeal on our own motion. We affirm.

The facts are as follows: Edward Hamel, the plaintiff's decedent, worked in the paint shop at Simplex Time Recorder Company. The equipment in the paint shop included two electrostatic paint spray booths, which used a high energy electrical system as part of the spray painting process. During the painting process, some paint spray misses the object to be painted and builds up on the walls and floor of the booth. This "overspray" containing inflammable solvents can create a fire hazard because an electrical arc from the electrostatic painting equipment can ignite the paint residue. Lacquer thinner, used by Simplex to remove the paint residue, is also inflammable and can contribute to the potential fire hazard in the booth.

Simplex purchased fire insurance for its factory from Protection Mutual Insurance Company (Protection Mutual). Protection Mutual was one of the three members of the defendant, Factory Mutual Engineering Association (FMEA), an unincorporated association of three insurers, which was formed to perform engineering, inspection, and adjustment services for the insurers. FMEA inspected the Simplex facility five times before the accident on August 6, 1981. On each occasion, FMEA prepared a report and sent it to Protection Mutual. Protection Mutual then sent the report to Simplex.

In the first loss prevention report, dated March 19, 1980, FMEA noted that no regular schedule for cleaning overspray residue in the painting booths existed at Simplex, and that improved housekeeping was necessary because excessive

as a result of any act or omission in the course of such services. This provision shall not apply in the event the active negligence of the insurer, its agent or employee created the condition which was the proximate cause of injury, death or loss."

overspraying deposits existed. FMEA recommended that the walls and floor of the spray booth be cleaned at least weekly. FMEA also recommended improvements in the storage of the inflammable lacquer thinner.

On the second regularly scheduled inspection, October 24, 1980, FMEA noted that, although there had been a slight improvement in housekeeping in the painting booth, the paint residue buildup was still excessive. Again, FMEA recommended that Simplex clean the painting booths at least weekly, or more frequently if the excessive buildup continued. On November 18, 1980, fire broke out in one of the painting booths, and FMEA prepared a loss report for Protection Mutual. FMEA attributed the fire to a static charge which ignited a spray of lacquer thinner, and recommended a number of improvements in the handling of inflammable liquids and fire protection equipment.

On March 24, 1981, FMEA again performed an inspection subsequent to a fire in one of the painting booths. A short circuit had ignited deposits of paint overspray in the booth. FMEA again recommended that the walls and floors of the spray booth be cleaned at least once weekly, or more often if excessive buildup continued. FMEA's loss report noted that Simplex promised to begin weekly clean-up. On May 15, 1981, FMEA prepared a loss prevention report as part of another regular periodic inspection. In this report, FMEA noted that Simplex had begun weekly cleaning of the spray booths. Fire retardant paper was being used on the floor, and FMEA recommended that this be replaced more often than once weekly.

The accident which caused Edward Hamel's death occurred on August 6, 1981. A spark ignited the paint particles in the air, and the fire spread rapidly to the paint deposits on the spray booth surfaces. Hamel attempted to leave the booth, but fell and was seriously burned.[3] He died from his

---

[3]After the accident, on August 25, 1981, FMEA inspected the Simplex facility and prepared a loss report. The report noted that the spray booths were being cleaned weekly, and the paper floor covering was being changed daily. FMEA recommended that housekeeping in the spray

injuries on September 24, 1981. The plaintiff alleges that
FMEA's negligence in performing inspections and making
recommendations on safety measures to be undertaken by
Simplex was a proximate cause of the fire that caused
Hamel's death. The plaintiff concedes that FMEA would be
protected from liability by § 16A if it had limited its activity
to inspection and collection of data only. The plaintiff con-
tends, however, that FMEA's recommendations for a clean-
ing schedule and improved procedures for handling lacquer
thinner constituted "active negligence" and that the defend-
ant, therefore, is not protected by § 16A. See note 2, *supra.*
We do not agree.

The distinction between "active" and "passive" negligence,
like the distinction between misfeasance and nonfeasance, is
not favored in Massachusetts law. See *Narine* v. *Powers*, 400
Mass. 343, 346 (1987); *Whitney* v. *Worcester*, 373 Mass.
208, 221 (1977); *Stewart* v. *Roy Bros. Inc.*, 358 Mass. 446,
458 (1970). We therefore look to the policy determination
made by the Legislature to determine what the Legislature
intended to exempt in the last sentence of § 16A.

We have said that § 16A "represents a legislative determi-
nation that an insurer is not to be penalized for making or
not making a voluntary safety inspection for its own benefit
and as an incident of its insurance business. That determina-
tion essentially expresses a policy determination analogous to
that expressed in *Matthews* [v. *Liberty Mut. Ins. Co.*, 354
Mass. 470 (1968)]." *Swift* v. *American Mut. Ins. Co.*, 399
Mass. 373, 377 n.9 (1987). In *Matthews*, we said that
" '[i]nsurance companies which engage in accident preven-
tion work, the social desirability of which cannot be ques-
tioned, should be able to do so without incurring unlimited
liability for failing to discover a hazard that some jury might
think ought to have been discovered. If an insurance com-
pany can escape tort liability altogether by not making any
inspections on the premises of the insured, but may incur un-

booths should be further improved by keeping overspray residue to a mini-
mum, by daily cleaning, if necessary.

limited tort liability by making some inspections, it more than likely will decline to make any, unless required to do so by statute. The ultimate losers will be workmen and their families.' *Kotarski* v. *Aetna Cas. & Sur. Co.*, 244 F. Supp. 547, 558-559 (E.D. Mich. [1965])." *Matthews, supra* at 473. Given the statute's clear purpose, we think that the Legislature intended to exempt insurers from liability for safety inspections and for making recommendations to promote safety unless the insurer by its actions increases the safety risk at the facility inspected.

The recommendations made by FMEA did not increase any risk at the Simplex facility. Simplex had no cleaning schedule before the FMEA inspections; after FMEA made its recommendations, Simplex instituted weekly cleanings of the spray booths and daily changes of the protective floor coverings. While these measures apparently were not adequate to prevent the accident which injured Hamel, the defendant certainly did not increase the risk that already existed in the spray booths. There was no error in allowing the defendant's motion for summary judgment.

*Judgment affirmed.*