LORRAINE COONEY *vs.* DEPARTMENT OF MENTAL
RETARDATION & others.[1]

No. 99-P-994.

Hampden. April 2, 2001. - August 27, 2001.

Present: PORADA, LENK, & KANTROWITZ, JJ.

*Practice, Civil,* Summary judgment. *Statute,* Construction. *Mentally Retarded Person. Department of Mental Retardation. Negligence,* Report of abuse. *Words,* "Reasonable cause to believe."

A Superior Court judged properly granted summary judgment in favor of defendants, a Department of Mental Retardation contractor and its employee, on a complaint alleging that the defendants, without appropriate training or oversight, used "facilitated communication techniques" to communicate with two adult Department of Mental Retardation clients residing in the plaintiff's home, resulting in charges against the plaintiff of suspected sexual abuse that ultimately were deemed unfounded, where the defendants set forth uncontroverted facts that they, as "mandated reporters" under G. L. c. 19C, § 1, had reasonable cause to believe that the clients were suffering from a reportable condition, i.e., sexual abuse, based on the defendants' evaluative judgment as to the reported charges that had been communicated by what was perceived at that time to be a reliable and suitable communication technique. [382-389]

CIVIL ACTION commenced in the Superior Court Department on August 16, 1994.

The claims against defendant Baroco, Inc., were heard by *Lawrence B. Wernick,* J., on a motion for summary judgment, and a motion for reconsideration was heard by him; the claims against defendant Campbell were heard by *Judd J. Carhart,* J., on a motion for summary judgment.

*Patrick J. Markey* for the plaintiff.

*Denise M. Tremblay* for the defendants.

LENK, J. The plaintiff Lorraine Cooney filed a multicount

---

[1]Paula Braun; Baroco, Inc.; and Cheryl Campbell.

complaint for damages in 1994 against the Department of Mental Retardation (DMR) and its employee Paula Braun, as well as against Baroco, Inc. (Baroco), and its employee Katherine Hamel, for actions taken in connection with the removal in 1992 of two adult female mentally retarded DMR clients from the plaintiff's home, where they had long resided, following allegations and reporting thereof to authorities of suspected sexual abuse that ultimately were deemed unfounded. In 1995, the plaintiff's claims against DMR and Braun were dismissed essentially because of their immunity from liability under the discretionary function exception of G. L. c. 258, § 10(*b*). In 1997, the plaintiff was permitted to amend her complaint to substitute Baroco's employee, Cheryl Campbell, as a defendant in Katherine Hamel's stead. In February, 1998, a Superior Court judge allowed Baroco's motion for summary judgment and, on July 17, 1998, denied the plaintiff's July 13, 1998, motion for reconsideration. On September 2, 1998, another Superior Court judge allowed Campbell's motion for summary judgment. The plaintiff brings this appeal challenging only the allowance of summary judgment in favor of Baroco and Campbell.

It is undisputed that the plaintiff Cooney was at all material times a contractor to the DMR as a specialized home care provider. For many years she had in her care two mentally retarded women, L.G. and J.S. The two women resided with Cooney, and, during April, 1992, they attended a specialized day program at Baroco, a for-profit human service agency, to improve their communication and motor skills. Baroco's program at the time implemented a new technique known as "facilitated communication."[2] On April 8, 1992, Laura Hooper, a Baroco employee who was L.G.'s primary facilitator, reported to superiors that L.G. had claimed during a facilitated communication session that Cooney had touched her private parts. Baroco through Hooper that day notified the DMR and filed with the Disabled Persons Protection Commission (DPPC) a

[2]Facilitated communication was a method of communicating with individuals whose communication skills are significantly impaired. The technique apparently required a "facilitator" to help support the arm or hand of a nonverbal person and guide their fingers to appropriate keys on a keyboard or letters on a letter board.

report of suspected sexual abuse pursuant to G. L. c. 19C, §§ 1, 10. That day an investigator (Braun) was appointed from the DMR, and her rather protracted investigation thereafter ensued. On April 14, 1992, J.S., again through facilitated communication but with a different facilitator, made a similar assertion of abuse as to Cooney which Braun included in her investigation. At some time in April, 1992, both L.G. and J.S. were removed from Cooney's care. On September 29, 1992, L.G. and J.S., apparently again through facilitated communication, recanted or denied their allegations of abuse. On October 5, 1992, DMR issued a decision and action letter which concluded there was no evidence to support the abuse allegations against Cooney.

Cooney asserted the following claims against Baroco: negligence, negligent and intentional infliction of emotional distress, and violation of her civil rights, G. L. c. 12, § 11I. Cooney's claims against Campbell were for negligent failure to supervise, negligent and intentional infliction of emotional distress, and violation of her civil rights, G. L. c. 12, § 11I. The gravamen of all these claims arises from the defendants' allegedly unsuitable use of facilitated communication techniques with L.G. and J.S., allegedly without appropriate training and oversight, resulting in the allegations made against Cooney that Baroco reported to DMR and DPPC and that were later determined to be unfounded.

In reviewing the judges' allowance of summary judgment in favor of Baroco and Campbell, we look to the record on appeal to discern what material was properly before each judge pursuant to Mass.R.Civ.P. 56, 365 Mass. 824 (1979). We view that evidence in the light most favorable to Cooney, the nonmoving party, and determine, if no genuine issue of material fact exists, whether Baroco or Campbell were entitled to judgment as matter of law. "We may consider any ground supporting the judgment." See *Beal* v. *Selectmen of Hingham*, 419 Mass. 535, 539 (1995). See also *Wheatley* v. *American Tel. & Tel. Co.*, 418 Mass. 394, 397 (1994). We turn first to the allowance of Baroco's motion.

Baroco based its motion for summary judgment upon its asserted status as a "mandated reporter" under G. L. c. 19C, § 1, and upon the immunity from civil liability provided by G. L. c. 19C, § 10, to mandated reporters who report abuse.

Section 1, as inserted by St. 1987, c. 465, § 11, defines "mandated reporter" as

> "any physician, medical intern, hospital personnel engaged in the examination, care or treatment of persons, medical examiner, dentist, psychologist, nurse, chiropractor, podiatrist, osteopath, public or private school teacher, educational administrator, guidance or family counselor, day care worker, probation officer, social worker, foster parent, police officer or person employed by a state agency within the executive office of[3] human services as defined by section sixteen of chapter six A, or employed by a private agency providing services to disabled persons who, in his professional capacity shall have reasonable cause to believe that a disabled person is suffering from a reportable condition."

Section 1 defines "reportable condition" as "a serious physical or emotional injury resulting from abuse, including unconsented to sexual activity."

Section 10, as inserted by St. 1987, c. 465, § 11, provides:

> "No mandated reporter shall be liable in any civil or criminal action by reason of submitting a report. No other person making a report shall be liable in any civil or criminal action by reason of submitting a report if such report was made in good faith; provided, however, that no person who abuses a disabled person shall be exempt from civil or criminal liability by reason of their reporting such abuse."

Baroco contends that, because at all material times it was a private agency providing services to disabled persons and its employees in their professional capacity had reasonable cause to believe that L.G. and J.S., disabled persons, were each suffering from a reportable condition, i.e., sexual abuse, it was required to and did report such conditions immediately. It contends that it is accordingly immune from civil liability to Cooney for having done so.

Cooney countered that Baroco had not shown as matter of

---

[3]St. 1998, c. 161, § 92, an emergency act, approved July 2, 1998, inserted "health and" before "human services."

law that it was a mandated reporter and was thus not entitled to summary judgment on this basis. In essence, Cooney maintained that, because Baroco's employees were aware of the inherent fallibility and unproven effectiveness of the facilitated communication technique, the statements that first L.G. and later J.S. made about Cooney through the use of that technique could not have formed the basis of a "reasonable cause to believe" that either was suffering from sexual abuse. Cooney appears to acknowledge that Baroco and its employees would otherwise fall within the definition of "mandated reporters" if they in fact had had reasonable cause to believe that L.G. or J.S. were suffering from sexual abuse.[4]

The question, then, is what may constitute "reasonable cause to believe" under G. L. c. 19C, § 1. We are not aware of any relevant decisions interpreting the phrase as it appears in this statute. The identical language, however, appears in G. L. c. 119, § 51A, certain provisions of which, in all material respects, mirror those at issue. Section 51A, as amended through St. 1993, c. 50, § 23, provides in pertinent part that certain identified persons who, in their "professional capacity shall have reasonable cause to believe that a child under the age of eighteen years is suffering physical or emotional injury resulting from abuse inflicted upon him which causes harm or substantial risk of harm to the child's health or welfare including sexual abuse, or from neglect, . . . shall immediately report such condition to the department by oral communication and by making a written report within forty-eight hours after such oral communication . . . ."[5] Section 51A further provides that "[n]o person so required to report shall be liable in any civil or criminal action by reason of such report."

The social policy underlying both statutes seems identical as well: to encourage certain professionals to report known or suspected abuse so that those who are vulnerable and at risk,

---

[4]Cooney does not contest that an entity, rather than solely its employees, may be a "mandated reporter" under § 1, and we accordingly do not address the point.

[5]Prior to the 1993 amendment of the statute, the provision read "reasonable cause to believe that a child . . . is suffering serious physical or emotional injury resulting from abuse inflicted upon him including sexual abuse, or from neglect . . . ."

whether children or disabled persons, may be protected. See *Hope* v. *Landau*, 21 Mass. App. Ct. 240, 242 (1985), *S.C.*, 398 Mass. 738 (1986). Sound principles of statutory construction make it desirable that our interpretation of provisions that have identical language and deal with essentially the same subject be uniform. See *Webster* v. *Board of Appeals of Reading*, 349 Mass. 17, 19 (1965); *Wood* v. *Commissioner of Correction*, 363 Mass. 79, 81-82 & n.5 (1973). Accordingly, we look to decisions construing the meaning of "reasonable cause to believe" as the phrase appears in the above quoted mandatory disclosure provisions of G. L. c. 119, § 51A.

In *Mattingly* v. *Casey*, 24 Mass. App. Ct. 452, 456 (1987), we observed that "[s]ection 51A does not require the reporting of every bruise; it requires reporting on the basis of indicators which give reasonable cause to believe that a child is being abused. That conclusion requires an element of judgment to separate an incident from a pattern, the trivial from the serious." Several years later, in the context of determining the appropriate standard to be met at a "seventy-two hour hearing" under G. L. c. 119, § 24, the Supreme Judicial Court looked elsewhere in that statute to other uses of the phrase "reasonable cause." *Care and Protection of Robert*, 408 Mass. 52, 63-64 (1990). As used in the mandatory disclosure provisions of § 51A, the court took the phrase "reasonable cause to believe" to mean a "threshold function, thereby implying a relatively low degree of accuracy." *Id.* at 63. "[A] presentation of facts which create a suspicion of child abuse is sufficient to trigger the requirements of § 51A. On the receipt of a report pursuant to § 51A, DSS must undertake its own investigation of the situation to determine whether further action is warranted." *Ibid.* Further, "it is inevitable that a threshold determination is more likely to be erroneous than an intermediate or final determination which utilizes a more rigorous review process." *Id.* at 65.

The documentary material submitted by the parties in support of and in opposition to Baroco's summary judgment motion was quite meager. As relevant to the issue whether, when it made the report to DPPC and DMR, Baroco had reason to believe that L.G. or J.S. were suffering from sexual abuse, we look to the brief excerpts provided from the depositions of Campbell, Cooney, and Kelly Powers, as well as to the October

5, 1992, DMR decision and action letter.[6] We begin with the letter.

The letter describes the DMR investigation which began on April 8, 1992, after it was notified by Baroco's employee (presumably Hooper, L.G.'s primary facilitator) that L.G. had "facilitated to" her that Cooney had touched her private parts. DMR's investigator, Braun, interviewed L.G. at Baroco the following day. "After discussion with B.C. and C.D.,[7] it was evident that there was risk that the complaints might be valid. In light of the potential risk it was determined to remove [L.G.] and [J.S.] from the home of [Cooney]." J.S. made a similar allegation (presumably to Powers, her primary facilitator) on April 14 and the district attorney was notified in late April. After Braun learned in late June that the district attorney would not go forward with the case, she continued the DMR investigation. L.G. and J.S. recanted their previous allegations of sexual abuse on September 29, 1992. "[L.G.] was sorry that she had lied and did not know why she did it; while [J.S.] said that she saw it as a way to get out of the home for she did not like [Cooney]." DMR concluded that, in view of the retracted allegations, there was no evidence to support the allegations that Cooney had sexually abused L.G. and J.S.

The Campbell deposition excerpts disclose information about (a) Campbell's own training in, knowledge of, and views about facilitated communication; (b) the training Baroco staff received in facilitated communication; (c) Campbell's knowledge as to L.G.'s level of functioning and as to the use of facilitated communication with L.G.; and (d) what Campbell did after observing L.G.'s April 8, 1992, facilitated communication concerning Cooney.

Campbell testified that she had attended two or three days of training sessions in the spring or summer of 1991 in the technique of facilitated communication, which neither required

---

[6]We discern no factual relevance for rule 56 purposes either in Cooney's lay opinion that Baroco is a "mandatory reporter" or in prior motion papers and a judicial decision as to a rule 12(b)(6) motion, Mass.R.Civ.P. 12(b)(6), 365 Mass. 755 (1974).

[7]The identities of "B.C. and C.D." are not entirely clear, but we presume that the initials refer to Baroco employees.

her to practice the technique on clients nor resulted in any kind of certification. She did not undergo further formal training but read books and articles on the technique, about which there was a "flood of information . . . coming in daily." She understood that "this was an experimental technique that needed further information." Campbell herself trained most, if not all, of the staff at Baroco (including the two facilitators, Laura Hooper[8] and Kelly Powers, to whom L.G. and J.S. had made their disclosures about Cooney) as well as others, explaining that this was an experimental technique. Campbell described the training she had provided to Baroco staff prior to April of 1992, as follows:

> "The initial training was probably two hours long, or thereabouts, and then it was a consultant model, so I would go in when they'd have questions. I'd check in when I was there. I have no way of knowing how many hours by that time they had actually logged."

Campbell authorized the placement of L.G. and J.S. in Baroco's facilitated communication pilot program but did not specifically advise caregivers such as Cooney of this,[9] although the caregivers were given information about such communication in the daily logs sent to them.

As to Campbell's knowledge of L.G.'s abilities, Campbell testified that L.G. was, in her view, retarded, perhaps autistic as well, that she could go to the bathroom by herself, could follow directions, and was part of Baroco's supervised community volunteer program, helping to deliver Meals on Wheels and the like. After Campbell saw the text of what L.G. had "facilitated" about Cooney, Campbell testified, she discussed the communication with "the instructor and the director," discussed how they each were interpreting it, took into account what L.G.'s demeanor was, "what was she doing, that kind of observable information," before they decided it had to be reported to DPPC.

---

[8]In Campbell's deposition, Laura Hooper is also referred to as Laura Armstrong.

[9]The record is silent as to what, if any, obligation Baroco had to discuss with, or obtain the approval of, Cooney in connection with services it was to provide to L.G. and J.S. Both Baroco and Cooney apparently provided services to the women by virtue of contractual arrangements with DMR.

Neither Powers nor Campbell had before that time observed physical evidence or other signs of any type of abuse as to L.G. or J.S., although Campbell noted in this regard that "[t]he only thing that put a question mark in our head was that Lorraine [Cooney] consistently refused to allow us to do a home visit."

The plaintiff contends that the foregoing establishes the existence of disputed issues of material fact as to whether Baroco's employees had "reasonable cause to believe" that L.G. and J.S. were suffering from sexual abuse. We think not. The requirements of G. L. c. 19, §§ 1 and 10, are triggered by a presentation of facts that create a suspicion of abuse. Where, as here, the initial precipitating fact giving rise to suspicion is an utterance containing an allegation of abuse, we think something more than just the utterance itself is necessary for there to be "reasonable cause to believe" that abuse may have occurred. The Legislature, after all, requires reporting when there is "reasonable" cause, and that word cannot be ignored or read out of the statute entirely. Indeed, it implies that some exercise of judgment should occur to rule out, for example, assertions that are impossible, utterly fantastic, plainly fabricated, or made only in jest. Nonetheless, the "something more" to which we allude is of necessity not very much more, and it was present here. The summary judgment materials pertinent to Baroco and Campbell show an evaluative judgment as to the reported charge which had been communicated by what was perceived at the time to be a reliable and suitable communication technique.

The record before the judge considering Baroco's summary judgment motion does not controvert the accuracy of Baroco's assessment of L.G.'s and J.S.'s diagnoses and functional levels. While it surely suggests that Baroco employees did not undergo extensive training in the technique of facilitated communication, no evidence was offered to show that the training received and provided or the subsequent supervision of Baroco employees was inadequate. The record establishes that the technique was indisputably new and experimental, but it does not create a disputed issue as to whether anyone at Baroco knew at the time that the technique was unreliable or unsuitable for L.G. and J.S. To the contrary, the record reflects that Baroco employees thought it worked well. In sum, Baroco set forth material facts,

uncontroverted by the plaintiff, establishing that its employees had reasonable cause to believe that L.G. and J.S. were being abused: L.G. and J.S., through use of a communication technique that Baroco employees deemed appropriate for the women and suitable to the purpose, each made an utterance containing an assertion of abuse concerning their caregiver, who had not permitted Baroco employees to make home visits. Nothing in the record before the judge raises any suggestion that the utterances were impossible, utterly fantastic, fabricated by anyone, made only in jest, etc. We conclude that Baroco's motion for summary judgment was correctly granted.

The record reflects that almost five months after Baroco's motion was allowed, the plaintiff sought reconsideration. This time, she supported her motion with numerous documents including, for the first time, an affidavit from the plaintiff, and documents that Baroco had recently produced,[10] such as facilitated communication logs for L.G. and J.S. and facilitated communication exemplars for L.G. These can be read as calling into question the level at which L.G. and J.S. could actually function, their capacity to ratiocinate or communicate with others in any manner, and their toileting capabilities and the concomitant arguable need for others to assist them and perhaps thereby touch private parts. They also raise the spectre that Hooper's facilitation of L.G.'s abuse-related communication was occasioned by Hooper's own displeasure with doubts Cooney had earlier raised concerning the efficacy of facilitated communication. The judge denied reconsideration, noting that most of the facts then being raised could have been part of the record before him the first time around. The plaintiff does not contest on appeal the propriety of the judge's ruling, and our review of the record suggests that his refusal to permit reconsideration was, in the circumstances here, well within the judge's discretion.

The plaintiff maintains as well that the subsequent allowance by another judge of Campbell's summary judgment motion was error in two respects. First, she claims that Campbell did not establish that she was a mandated reporter with consequent

---

[10]The record does not clearly explain why the documents were not earlier produced or why a motion to compel their production was not pursued.

immunity from liability for the reporting of abuse. Second, the plaintiff contends, even if Campbell were a mandated reporter, summary judgment should not have entered in her favor because the tort and civil rights claims asserted against her related to more than the reporting of sexual abuse. We consider each in turn.

The judge in substance ruled that because Baroco had established as matter of law that it was a mandated reporter, that was the law of the case as to Campbell, Baroco's employee, as well. It should be noted, however, that the judge had before him a far more extensive documentary submission than had been made to the judge who heard Baroco's motion. In addition to documents such as Cooney's affidavit, excerpts from the depositions of Cooney, Campbell, and Powers, and the facilitated communication logs, there were also materials, scholarly and otherwise, showing that the technique of facilitated communication had been almost entirely discredited, having resulted in frequent false allegations of sexual abuse, and that, in 1993, the DMR notified its employees that, standing alone, facilitated communication was not to be used as the basis for any final action.

Having carefully reviewed all of these materials, we conclude that they do not put in dispute material issues of fact as to Campbell. Campbell was a speech pathologist who, at all relevant times, acted as Baroco's supervisory clinical coordinator. It appears that, after seeing the text of the facilitated L.G. communication about Cooney, she participated in the Baroco decision to make the G. L. c. 19C report of abuse, but it was Hooper and not Campbell who actually did so. While she was the person at Baroco who introduced the implementation of the technique and deemed it appropriate for L.G. and J.S., nothing in the record suggests that, at the time she did so, Campbell knew, had reason to know, or even entertained any serious misgivings that facilitated communication was unreliable, unsuited to L.G. or J.S., or that it frequently led to false allegations of sexual abuse. Indeed, nothing in the record suggests that facilitated communication had been discredited in the scholarly and general literature until well after the Baroco report of suspected abuse had been made. Nothing in the record shows

that the training and supervision provided to and received by Baroco employees in the use of the facilitated communication technique was inadequate. Likewise, nothing in the record suggests that Campbell had or knew of information at odds with her own assessment of L.G.'s and J.S.'s diagnoses, functional levels, or capabilities. Finally, nothing in the record suggests that the alleged vendetta against Cooney by other Baroco employees in any way involved or was even known to Campbell.

In view of this, Campbell set forth material facts, essentially uncontroverted by Cooney, sufficient to establish that she had reasonable cause to believe that L.G. and J.S. had been abused, that she was a mandated reporter, and that she thereby was immune from civil liability for having participated in making the G. L. c. 19C report. In so saying, we do not in any way minimize the hideous consequences that may attend such a report when, as here, the suspicion precipitating it proves unfounded. However, in order to encourage professionals to report, without fear of retribution, known or suspected instances of abuse and thereby to protect those who are vulnerable and at risk, the threshold hurdle of "reasonable cause to believe" is and must be very low, notwithstanding the very real risk of error it inevitably carries in its wake.

Finally, we think the plaintiff's contention that Campbell, notwithstanding her protected status as a mandated reporter, remains liable in connection with the plaintiff's tort and civil rights claims is without merit. The contention does not rise to the level of adequate appellate argument, see Mass.R.A.P. 16(a)(4), 367 Mass. 921 (1975), and, in any event, all of the plaintiff's claims patently arise out of the reporting activity. Without that report of suspected abuse, moreover, the plaintiff would be unable to maintain that she was caused harm by Campbell, a key component of the asserted causes of action. Summary judgment in Campbell's favor was correctly granted.

*Judgment affirmed.*