Jane DOE, ppa Mother Doe, Mother
Doe, and Father Doe,
Plaintiffs,

v.

Leilanie D'AGOSTINO, Nicole Carey, Robert Penta, individually and in his official capacity as Principal of the Brackett School, Kathleen Donovan, individually and in her official capacity as Superintendent of the Arlington School District, Joani Lamachia, Barbara Goodman, David W. Mckenna, Denis Sullivan, Paul Schlichtman, Su-

zanne Owayda, Martin Thrope, individually and in their official capacities as Arlington School Committee Members, the Arlington School Committee, and the Town of Arlington, Defendants.

Civil Action No. 02–11194–JLT.

United States District Court,
D. Massachusetts.

April 25, 2005.

Kay H. Hodge, Stoneham, Chandler & Miller LLP, Boston, for Arlington School Committee, Town of Arlington, Barbara C. Goodman, David W. McKenna, Denis J. Sullivan, Joani LaMachia, Kathleen F. Donovan, LeiLanie D'Agostino, Martin J. Thrope, Nicole E. Carrie, Paul Schlichtman, Robert Penta, Suzanne Owayda, Defendants.

Harold Jacobi, III, Jacobi & Associates PA, Lexington, for Father Doe, Mother Doe, Counter Defendants.

Nancy Sue Keller, Jacobi & Associates, Lexington, for Father Doe, Mother Doe, Counter Defendants.

Maria A. Luise, Melrose, for LeiLanie D'Agostino, Counter Claimant.

Frank Mondano, Balliro & Mondano, Boston, for LeiLanie D'Agostino, Counter Claimant.

John M. Simon, Stoneman, Chandler & Miller, LLP, Boston, for Arlington School Committee, Town of Arlington, Barbara C. Goodman, David W. McKenna, Denis J. Sullivan, Joani LaMachia, Kathleen F. Donovan, LeiLanie D'Agostino, Martin J. Thrope, Nicole E. Carrie, Paul Schlichtman, Robert Penta, Suzanne Owayda, Defendants.

## MEMORANDUM

TAURO, District Judge.

Plaintiffs Mother Doe and Father Doe (collectively "Plaintiffs") bring this action on their own behalf and on behalf of their minor child, Jane Doe (hereinafter "Minor Plaintiff"). Plaintiffs allege that Defendant LeiLanie D'Agostino ("D'Agostino"), Minor Plaintiff's fifth-grade teacher, sexually, physically, and emotionally abused Minor Plaintiff at the Brackett School in Arlington, Massachusetts. Plaintiffs assert claims against D'Agostino under 42 U.S.C. § 1983 along with various state law claims.

Plaintiffs have also filed suit against: (1) Nicole Carey ("Carey"), the teacher's aide assigned to D'Agostino's fifth-grade classroom; (2) Robert Penta ("Penta"), the principal of the Brackett School; (3) Kathleen Donovan ("Donovan"), the superintendent of the Arlington School District; (4) Joani LaMachia, Barbara Goodman, David W. McKenna, Denis Sullivan, Paul Schlichtman, Suzanne Owayda, and Martin Thrope, the members of the Arlington School Committee; (5) the Arlington

School Committee; and (6) the Town of Arlington (collectively "Arlington Defendants"). Plaintiffs advance § 1983 claims and state law claims against Carey, Penta, Donovan, and the members of the Arlington School Committee. Plaintiffs also allege the Town of Arlington violated 20 U.S.C. § 1681 ("Title IX") and assert state law claims against the Arlington School Committee and the Town.

D'Agostino and the Arlington Defendants have moved for summary judgment. Plaintiffs oppose D'Agostino's and the Arlington Defendants' motions for summary judgment and have, themselves, moved for summary judgment.

### Background

During the 2000–2001 school year, Minor Plaintiff was a student in D'Agostino's fifth-grade class at the Brackett School in Arlington, Massachusetts.[1] Throughout the school year, Plaintiffs claim that D'Agostino repeatedly harassed, abused, and sexually abused Minor Plaintiff.[2] D'Agostino allegedly conducted an unwanted ringworm examination of Minor Plaintiff.[3] During this examination, D'Agostino purportedly pulled down Minor Plaintiff's pants to expose her lower abdomen and touched Minor Plaintiff's abdomen.[4] D'Agostino then proceeded to teach a lesson on ringworm and stated that a student in the class had ringworm.[5]

On multiple occasions, when Minor Plaintiff asked to go to the bathroom, D'Agostino allegedly pressed Minor Plaintiff's abdomen in an attempt to force her to urinate and asked Minor Plaintiff how it felt.[6] In front of the class, D'Agostino asked Minor Plaintiff if she had "piddled" on the floor and stated that Minor Plaintiff smelled like urine and vinegar and bathed once a week.[7]

In addition, D'Agostino purportedly "coerced" and "manipulated" Minor Plaintiff to kiss, hug, and sit on her lap.[8] D'Agostino insisted on rolling a lint brush over Minor Plaintiff's chest.[9] D'Agostino rubbed Minor Plaintiff's hands and had Minor Plaintiff "jump on her back" to erase the board.[10] In front of other students, D'Agostino remarked that Minor Plaintiff's "private parts" were visible, that Minor Plaintiff's "underwear and undershirt were not matching," and that Minor Plaintiff was "wearing an undershirt not a bra."[11] Using another student's e-mail account, D'Agostino allegedly sent Minor Plaintiff an e-mail stating, "in essence, 'Heyya sexxa wanna date?'"[12] D'Agostino called Minor Plaintiff "Pip," "Little Prince," and "Slick Chick."[13] D'Agostino brought Minor Plaintiff's crying to the class's attention, gave Minor Plaintiff "Good Day" certificates for not crying, and used Minor Plaintiff as an "exhibit" in lessons concerning science, health, and hy-

---

1. See Arlington Defs.' Statement of Undisputed Facts ¶ 1.

2. See Am. Compl. ¶ 26.

3. Keller Aff. [# 72] Ex. 8 ("Minor Pl.'s Aff.") ¶ 6.

4. Id.; Luise Aff. [# 62] Ex. A ("Minor Pl.'s March 16, 2004 Dep.") at 225:5–10.

5. Minor Pl.'s Aff. ¶ 6.

6. Id. ¶ 2; Pls.' Statement of Material Facts as to Which Exists a Genuine Issue to Be Tried in Regards to D'Agostino's Mot. Summ. J. ("Pls.' Material Facts as to D'Agostino") ¶ 8.

7. Pls.' Material Facts as to D'Agostino ¶¶ 6–7.

8. Id. ¶ 6.

9. Id. ¶ 7.

10. Id. ¶ 6.

11. Id. ¶ 7.

12. Id.

13. Id. ¶¶ 6–7.

giene.[14] Plaintiffs also claim that teacher's aide Carey was present and witnessed D'Agostino's alleged conduct on numerous occasions.[15]

In June of 2001, Mother Doe removed Minor Plaintiff from the Brackett School due to D'Agostino's alleged conduct.[16] On June 19, 2001, Plaintiffs' counsel wrote Superintendent Donovan a letter stating that Minor Plaintiff would not be returning to D'Agostino's classroom and called for an immediate investigation into D'Agostino's behavior.[17] In response, Donovan met with Principal Penta and D'Agostino and attempted to meet with Mother Doe and Minor Plaintiff.[18] In addition, Penta determined that Minor Plaintiff had passed the fifth grade because she had "completed all substantive course work."[19]

On August 17, 2001, Plaintiffs' counsel sent Donovan a second letter, which explained in greater detail Plaintiffs' allegations concerning D'Agostino's conduct.[20] In response to this letter, Donovan met with D'Agostino and Penta again, and arranged for the Arlington School's counsel

to conduct an investigation.[21] After reviewing the results of the investigation, Donovan determined the allegations were unsubstantiated and told D'Agostino not "to get too friendly with students or their families in the future."[22]

On April 24, 2002, a non-mandated reporter forwarded Mother Doe's letter outlining D'Agostino's alleged acts to the Massachusetts Department of Social Services ("DSS").[23] Subsequently, DSS conducted an investigation. DSS found no "reasonable cause to believe that [Minor Plaintiff] ha[d] been abused or neglected by Ms. D'Agostino."[24] Plaintiffs contend, however, that the Arlington Defendants and D'Agostino "failed to provide DSS with all the pertinent information."[25]

Plaintiffs claim that Minor Plaintiff found D'Agostino's alleged conduct to be emotionally abusive.[26] D'Agostino's acts made Minor Plaintiff feel "uncomfortable," "weird," "sick to her stomach," and caused her to cry.[27] Plaintiffs also assert that Minor Plaintiff did not learn anything in D'Agostino's class.[28] And as a result of

14. *Id.* ¶¶ 12, 19; Minor Pl.'s Aff. ¶¶ 16–18.

15. Pls.' Statement of Material Facts as to Which Exists a Genuine Issue to Be Tried ("Pls.' Material Facts as to Arlington Defs.") ¶¶ 26–28.

16. Keller Aff. [# 72] Ex. 10 ("Mother Doe's Aff.") ¶ 8.

17. Simon Aff. [# 58] Ex. B.

18. *See* Simon Aff. [# 58] Ex. C ("Donovan's July 12, 2004 Dep.") at 30:11–35:17.

19. *See* Arlington Defs.' Statement of Undisputed Facts ¶ 3; Mother Doe's Aff. ¶ 8.

20. Simon Aff. [# 58] Ex. F.

21. *See* Donovan's July 12, 2004 Dep. at 44:24–45:3, 58:16–23, 77:10–18.

22. *Id.* at 85:9–20. During the school year, Mother Doe and D'Agostino were friends.

Luise Aff. [# 62] Ex. B ("Mother Doe's March 15, 2004 Dep.") at 84:2–18. On numerous occasions, D'Agostino went to Mother Doe's house and had contact with Minor Plaintiff outside of the classroom. *Id.* at 79:1–15; Minor Pl.'s March 16, 2004 Dep. at 63:7–18. In March of 2001, however, Mother Doe's and D'Agostino's friendship ended. Mother Doe's March 15, 2004 Dep. at 84:19–85:1, 88:11–89:10.

23. Simon Aff. [# 58] Ex. H at 1–4.

24. *Id.* at 19.

25. Pls.' Opp'n to Arlington Defs.' Mot. Summ. J. at 20; Pls.' Opp'n to D'Agostino's Mot. Summ. J. at 22.

26. Pls.' Material Facts as to D'Agostino ¶ 19.

27. *Id.* ¶¶ 18, 21, 30.

28. *Id.* ¶ 29.

D'Agostino's alleged abuse, Minor Plaintiff's treating psychologist diagnosed her with post-traumatic stress disorder.[29]

## Discussion

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate only if the record reveals that there is "no genuine issue as to any material fact and ... the moving party [has demonstrated an] entitle[ment] to a judgment as a matter of law."[30] Pursuant to this standard, the "party seeking summary judgment [must] make a preliminary showing that no genuine issue of material fact exists. Once the movant has made this showing, the nonmovant must contradict the showing by pointing to specific facts demonstrating that there is, indeed, a trialworthy issue."[31]

In deciding whether to allow a motion for summary judgment, a court " 'must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor.' "[32] But, a court "need not credit 'conclusory allegations, improbable inferences, and unsupported speculation.' "[33]

Of course, "[t]he happenstance that all parties seek summary judgment neither alters the yardstick nor empowers the trial court to resolve authentic disputes anent material facts."[34] A court considering cross-motions for summary judgment "must evaluate each motion separately, being careful to draw inferences against each movant in turn."[35] A motion for summary judgment is meant "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required."[36]

### A. *Title IX Claim against the Town of Arlington*

To prevail on a Title IX claim, Plaintiffs must show that Minor Plaintiff "was a student, who was subjected to harassment based upon sex ... [that] was sufficiently severe and pervasive to create an abusive educational environment."[37] Plaintiffs also must show that "a school official authorized to take corrective action had actual knowledge of the harassment, yet exhibited deliberate indifference to it."[38] If the institution, though, "takes timely and reasonable measures to end the harassment, it is not liable under Title IX for prior harassment."[39] Yet, if it learns

**29.** *Id.* ¶ 31.

**30.** Fed.R.Civ.P. 56(c). "In the lexicon of Rule 56, 'genuine' connotes that the evidence on the point is such that a reasonable jury, drawing favorable inferences, could resolve the fact in the manner urged by the nonmoving party, and 'material' connotes that a contested fact has the potential to alter the outcome of the suit under the governing law if the controversy over it is resolved satisfactorily to the nonmovant." *Blackie v. Maine,* 75 F.3d 716, 721 (1st Cir.1996).

**31.** *Blackie,* 75 F.3d at 721(quoting *Nat'l Amusements, Inc. v. Town of Dedham,* 43 F.3d 731, 735 (1st Cir.1995)).

**32.** *Mullin v. Raytheon Co.,* 164 F.3d 696, 698 (1st Cir.1999) (quoting *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990)).

**33.** *Bloomfield v. Bernardi Automall Trust,* 170 F.Supp.2d 36, 40 (D.Mass.2001) (quoting

*Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990)).

**34.** *Griggs–Ryan,* 904 F.2d at 115.

**35.** *Id.*

**36.** *Mullin,* 164 F.3d at 698 (quoting *Wynne v. Tufts Univ. Sch. of Med.,* 976 F.2d 791, 794 (1st Cir.1992)).

**37.** *Frazier v. Fairhaven Sch. Comm.,* 276 F.3d 52, 66 (1st Cir.2002) (numbering omitted).

**38.** *Id.* (citing *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 290, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998)).

**39.** *Wills v. Brown Univ.,* 184 F.3d 20, 26 (1st Cir.1999).

the measures were inadequate, the institution "may be required to take further steps to avoid new liability."[40]

The Arlington Defendants argue that Plaintiffs' Title IX claim cannot succeed because no Arlington school official had "actual knowledge" of D'Agostino's alleged harassment of Minor Plaintiff.[41] Plaintiffs insist that the Town of Arlington, vis-à-vis Principal Penta, received actual notice that D'Agostino "was creating a hostile environment" for female students through the prior complaints of other parents. Plaintiffs contend that Penta's deliberate indifference towards these earlier complaints made Minor Plaintiff vulnerable to D'Agostino's continued harassment.[42]

The Arlington Defendants and D'Agostino, however, have moved to strike portions of Plaintiffs' supporting affidavits concerning Penta's knowledge of D'Agostino's conduct. The Arlington Defendants and D'Agostino claim that these affidavits "are riddled with hearsay and other speculative assertions that do not satisfy the standards of personal knowledge, admissibility and competence required by Rule 56(e)" of the Federal Rules of Civil Procedure.[43] Plaintiffs argue that the disputed statements are not hearsay because they are not being offered to establish the truth of the matters asserted.[44]

■ This court agrees with Plaintiffs that most of the disputed statements are not offered to prove the truth of the matters asserted. But the statement of Robert Eagan, "It is common knowledge in the Brackett community that Ms. D'Agostino targets girls in her manipulative endeavors and not boys,"[45] is hearsay because the statement cannot be offered for any reason other than the truth of the matter asserted. This statement will not be considered in this court's analysis of the Arlington Defendants', D'Agostino's, and Plaintiffs' motions for summary judgment.

Plaintiffs allege that, in the 1997–1998 school year, John Langevin ("Langevin") told Penta that during a class about health and personal hygiene, D'Agostino "opened a can of tuna fish and told the girls in the class that this is what they would smell like if they did not clean their genital area properly."[46] Langevin also told Penta that, on multiple occasions, D'Agostino asked his daughter, "Am I your friend, or am I your teacher?" and reprimanded his daughter regardless of her answer to this question.[47] Langevin asserted that D'Agostino made his daughter complete a handwriting test before the entire class because D'Agostino claimed to have found a derogatory note in his daughter's desk, which referenced D'Agostino. In addition, Langevin stated that D'Agostino told the entire class that his daughter had cheated on a test, and that "D'Agostino had humiliated his daughter in front of her class and made his daughter cry."[48] Langevin then

40. *Id.*

41. Arlington Defs.' Mem. Supp. Summ. J. at 3–6.

42. Pls.' Opp'n to Arlington Defs.' Mot. Summ. J. at 4–8.

43. Arlington Defs.' Mot. to Strike at 1–3; D'Agostino's Mot. to Strike at 1–2.

44. Pls.' Opp'n to Arlington Defs.' Mot. to Strike at 2–8. Plaintiffs have agreed that this court could strike their statement that two other parents, the Brennans and Barrys, complained to Penta. *Id.* at 6.

45. Keller Aff. [# 72] Ex. 4 ("Robert Eagan Aff.") ¶ 8; Pls.' Material Facts as to Arlington Defs. ¶ 17.

46. Pls.' Material Facts as to Arlington Defs. ¶ 3; Keller Aff. [# 72] Ex. 2 ("Langevin Aff.") ¶ 3.

47. Pls.' Material Facts as to Arlington Defs. ¶ 3.

48. *Id.*

asked Penta to put a record of his complaints·in D'Agostino's personnel file, and Penta allegedly assured Langevin that he would complete this task.[49] Penta, however, never placed a record of ,Langevin's complaints in D'Agostino's personnel file.[50] Plaintiff's claim that Penta failed to inform Langevin that a complaint could not be placed in a teacher's personnel file ·based on only the request of a parent, and Penta did not explain to Langevin the procedure of how to file a grievance concerning a teacher.[51]

In October of 1997, Elizabeth Eagan and Robert Eagan (collectively "Eagans")· complained to Penta regarding D'Agostino's treatment of their daughter.[52] The Eagans informed Penta about D'Agostino's use of "inappropriate personalized incentives," such as "trips with Ms. D'Agostino to purchase food for the class pet and chances to walk Ms. D'Agostino's dog.".[53] In addition, the Eagans relayed their concerns about D'Agostino's "inability· to maintain a 'professional distance' with their daughter and other girls in her class" and their daughter's frequent crying in D'Agostino's class.[54]

Plaintiffs also cite incidents witnessed by Domenic Botolino ("Botolino"), a teacher at the Brackett School from 1997–2001.[55] Plaintiffs note that Botolino saw D'Agostino, on multiple occasions, hold her students' hands and walk down the hall surrounded by .her female students while her male students "straggled along behind." [56] Botolino also witnessed D'Agostino tickling one of her female students.[57] And at a teacher's meeting, Botolino, as union representative, stated "that teachers should keep·their hands to themselves." [58]

■ Based on this information, this court finds that Penta did not have "actual notice" that D'Agostino was subjecting female students "to harassment severe enough to compromise the victim's ... educational opportunities." [59] · In *Gebser v. Lago Vista Independent School District,* the Supreme Court held that "a complaint from parents of other students charging only that ... [the teacher] had made inappropriate ,comments during class ... was plainly insufficient to alert the principal to the possibility that ... [the teacher] was involved in a sexual relationship with a student." [60] Similarly, Langevin's complaint about D'Agostino's inappropriate "tuna fish" comment did not provide Penta with actual knowledge that D'Agostino was subjecting female students to a hostile environment. Likewise, the Eagans' complaints that D'Agostino used·"inappropriate incentives," was unable to maintain a

**49.** *Id.* ¶¶ 4, 8; Langevin Aff. ¶ 8. ·

**50.** Pls.' Material Facts as to Arlington Defs. ¶ 5. .

**51.** *Id.* ¶¶ 6–8. .

**52.** Keller Aff. [# 72] Ex. 5 ("Elizabeth Eagan Aff.") ¶ 7.

**53.** *See id.* ¶¶ 4, 7. '

**54.** *Id.* ¶¶ 6–7; Pls.' Material Facts as to Arlington Defs. ¶ 11.

**55.** *See* Keller Aff. [# 72] Ex. 3 ("Botolino Aff.") ¶¶ 5, 13.

**56.** Pls.' Material Facts as to Arlington Defs. ¶ 15.

**57.** Botolino Aff. ¶ 11.

**58.** Pls.' Material Facts as to Arlington Defs. ¶ 16.

**59.** *Wills v. Brown Univ.,* 184 F.3d 20, 26 (1st Cir.1999).

**60.** *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 291, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998); *see also Doe v. Sch. Admin. Dist.,* 66 F.Supp.2d. 57, 63 (D.Me.1999) (noting that "it is clear that actual notice requires more than a simple report of inappropriate conduct by a teacher").

"professional distance," and that their child frequently cried in class were insufficient to provide Penta with actual knowledge of D'Agostino's alleged propensity to sexually harass female students.[61] Moreover, Botolino's perceptions of D'Agostino's conduct and his comments at teacher's meetings do not support a finding of actual knowledge.

■ Even assuming, *arguendo*, that these complaints provided Penta with actual knowledge that D'Agostino was sexually harassing female students during the 1997–1998 school year, Plaintiffs also need to show that Penta responded to these complaints with deliberate indifference. Plaintiffs do not meet this burden. Both Elizabeth Eagan and Robert Eagan stated that the situation improved after Penta's involvement.[62] Elizabeth Eagan noted that Penta advised her that "he had spoken to Ms. D'Agostino and visited the class several times." [63] And even though Penta allegedly failed to file Langevin's complaint as promised, Langevin indicated that after Penta's involvement there were no further incidents between his daughter and D'Agostino.[64] As a result, Penta's response to these complaints cannot be considered deliberately indifferent. In each situation, Penta met with the parents, addressed their concerns, and the situations improved.

■ Furthermore, Penta's and Superintendent Donovan's response once they received actual notice of D'Agostino's alleged abuse of Minor Plaintiff was not deliberately indifferent. After receiving the first letter from Plaintiffs' counsel regarding D'Agostino's alleged abuse, Donovan met with Penta and D'Agostino and attempted to meet with Mother Doe. When Donovan received the second letter from Plaintiffs' counsel, which explained Plaintiffs' allegations in greater detail, Donovan met with Penta and D'Agostino again, and arranged for Arlington School's counsel to conduct an investigation. After reviewing the results of the investigation, Donovan determined that Plaintiffs' allegations were unsubstantiated.

Given these circumstances, the Arlington Defendants' motion for summary judgment on Plaintiffs' Title IX claim against the Town of Arlington (Count 20) is ALLOWED. Plaintiffs' motion for summary judgment on the same claim is DENIED.

## B. *Section 1983 Claims*

■ Section 1983 " 'supplies a private right of action against a person who, under color of state law, deprives another of rights secured by the Constitution or by federal law.' " [65] Section 1983, however, does not supply a private right of action for all federal acts. In *Middlesex County Sewerage Authority v. National Sea Clammers Assoc.*, the Supreme Court held that "[w]hen the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983." [66]

---

61. *See Davis v. DeKalb County Sch. Dist.*, 233 F.3d 1367, 1373 (11th Cir.2000) (holding that "a complaint of an incidental touching during an athletic event and a perceived imminent touching could not, as a matter of law," provide the principal with actual knowledge that the teacher was sexually molesting students).

62. Elizabeth Eagan Aff. ¶ 11; Robert Eagan Aff. ¶ 10.

63. Elizabeth Eagan Aff. ¶ 7.

64. *See* Langevin Aff. ¶ 8.

65. *Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 57 (1st Cir.2002) (quoting *Evans v. Avery*, 100 F.3d 1033, 1036 (1st Cir.1996)).

66. *Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Assoc.*, 453 U.S. 1, 20, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981).

Title IX, in relevant part, provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." [67] Initially, the remedy under Title IX was limited to a statutory procedure for terminating a recipient's federal funding, but in *Cannon v. University of Chicago,* the Supreme Court determined that Title IX contained an implied private right of action.[68] And in *Franklin v. Gwinnett County Public Schools,* the Court held that damages were an available remedy in a Title IX suit.[69] In *Gebser,* however, the Court limited a funding recipient's exposure to damage penalties under Title IX.[70] The Court decided that a school district could not be held "liable in damages under Title IX for a teacher's sexual harassment of a student absent actual notice and deliberate indifference." [71]

### 1. School Officials

█ Plaintiffs advance § 1983 claims against Penta, Donovan, and the members of the Arlington School Committee.[72] The Arlington Defendants contend that Plaintiffs' § 1983 claims are preempted by Title IX.[73] The Circuits that have addressed the question of whether Title IX preempts § 1983 are split on the issue. The Sixth, Eighth, and Tenth Circuits have held that Title IX does not preempt,[74] while the Second, Third, and Seventh have found the opposite.[75]

The Circuits finding against preemption did not include Title IX's implied private right of action in their preemption analysis.[76] Rather, they focused on the remedies expressly provided by Congress.[77] In doing so, these Circuits held that Congress's initial remedy for Title IX, a statutory procedure for terminating federal funds for the recipient, provides no evidence that Congress intended to supplant § 1983 actions.[78]

The Second, Third, and Seventh Circuits have refused to adopt a "narrow reading of the remedies available under Title IX's enforcement scheme." [79] To determine Congress's intent, the Second Circuit argued that a court must look to the statute's legislative history, as well as "the express remedies contained within the statute." [80]

---

67. 20 U.S.C. § 1681(a).

68. *Cannon v. Univ. of Chicago,* 441 U.S. 677, 695–96, 717, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979).

69. *Franklin v. Gwinnett County Pub. Schs.,* 503 U.S. 60, 76, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992).

70. *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 290–93, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998).

71. *Id.* at 292–93, 118 S.Ct. 1989.

72. Am. Compl. ¶¶ 110–15, 126–30.

73. Arlington Defs.' Mem. Supp. Mot. Summ. J. at 12.

74. *Crawford v. Davis,* 109 F.3d 1281 (8th Cir. 1997); *Seamons v. Snow,* 84 F.3d 1226 (10th Cir.1996); *Lillard v. Shelby County Bd. of Educ.,* 76 F.3d 716 (6th Cir.1996).

75. *Bruneau v. South Kortright Cent. Sch. Dist.,* 163 F.3d 749 (2d Cir.1998); *Waid v. Merrill Area Pub. Schs.,* 91 F.3d 857 (7th Cir.1996); *Pfeiffer v. Marion Ctr. Area Sch. Dist.,* 917 F.2d 779 (3d Cir.1990).

76. *E.g., Seamons,* 84 F.3d at 1233–34.

77. *Id.*

78. *Id.; Crawford,* 109 F.3d at 1284; *Lillard,* 76 F.3d at 723.

79. *Bruneau,* 163 F.3d at 756–57; *Waid,* 91 F.3d at 862–63; *Pfeiffer,* 917 F.2d at 789.

80. *Bruneau,* 163 F.3d at 757.

The Second Circuit concluded that Title IX's implied right of action should be considered part of the statute's enforcement scheme because the Supreme Court "found that Title IX's legislative history clearly indicates Congress' plan to create a private right of action."[81]

This court agrees with the Second Circuit's reasoning and will consider Title IX's private right of action as part of the statute's enforcement scheme. Plaintiffs, however, insist that their § 1983 claims are not precluded because Title IX's implied right of action applies only to funding recipients, not individuals. Yet, in *Smith v. Robinson*, the Supreme Court held that the Education of the Handicapped Act ("EHA") contained a comprehensive remedial scheme to supplant § 1983, even though the EHA did not include an express or implied right of action.[82] The fact that Title IX's implied right of action applies only to funding recipients is not dispositive.

The difficult question, therefore, is whether the remedial scheme provided by Title IX is sufficiently comprehensive to evidence Congress's intent to preclude § 1983 suits against school officials. The

Second, Third, and Seventh Circuits have held that Title IX's remedies present a comprehensive scheme sufficient to indicate Congress's intent to preempt § 1983 actions. To support this conclusion, these Circuits point to Title IX's complex administrative scheme and implied right of action which provides plaintiffs access to damage remedies.[83] Moreover, in *Smith v. Robinson*, the Supreme Court held that the procedural guarantees of the EHA were sufficient to supplant § 1983 claims.[84] And Title IX's remedies have been found to be as comprehensive as those provided by the EHA.[85]

The Second, Third, and Seventh Circuits have also refused to recognize a "constitutional rights exception to the *Sea Clammers* doctrine."[86] The Second Circuit found that a constitutional claim advanced under § 1983 claim, which was "based on the same factual predicate" as the plaintiff's Title IX claim, was preempted because "Congress intended Title IX to be the appropriate vehicle to protect all of plaintiff's rights."[87]

Here, Plaintiffs' § 1983 claims against the members of the Arlington School Committee, Donovan, and Penta arise from

---

**81.** *Id.* (citing *Cannon v. Univ. of Chicago*, 441 U.S. 677, 694, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979)).

**82.** *Smith v. Robinson*, 468 U.S. 992, 1009–13, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984); *see also Canty v. Old Rochester Reg'l Sch. Dist.*, 54 F.Supp.2d 66, 76–77 (D.Mass.1999) (noting the same).

**83.** *Bruneau*, 163 F.3d at 756–57; *Waid*, 91 F.3d at 862–63; *Pfeiffer*, 917 F.2d at 789. *But see, e.g., Lillard*, 76 F.3d at 723–24 (holding that Title IX does not contain a comprehensive enforcement scheme). Additionally, the First Circuit held in *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 901 (1st Cir.1988), "the separate liability of the supervisory officials at the University must be established, if at all, under section 1983, rather than under Title IX." But, in *Lipsett*, the preemption issue was not before the First Circuit.

**84.** *Smith*, 468 U.S. at 1010–13, 104 S.Ct. 3457.

**85.** *Canty*, 54 F.Supp.2d at 77 (holding that "[t]his Court cannot fairly rule that Title IX does not provide a remedy equivalent to that available in *Smith*, especially in light of the implied right of action"). *But see Doe v. Old Rochester Reg'l Sch. Dist.*, 56 F.Supp.2d 114, 119 (D.Mass.1999) (noting that, unlike Title IX, the EHA's legislative history illustrated that "Congress intended the statute to be the exclusive remedy").

**86.** *Bruneau*, 163 F.3d at 758; *Waid*, 91 F.3d at 862–63; *Pfeiffer*, 917 F.2d at 789.

**87.** *Bruneau*, 163 F.3d at 758.

D'Agostino's alleged abuse of Minor Plaintiff. Plaintiffs do not allege that any of the school officials sexually harassed Minor Plaintiff. Consequently, this court finds that Plaintiffs' § 1983 claims predicated on Title IX and Minor Plaintiff's substantive due process right to bodily integrity against the members of the Arlington School Committee, Donovan, and Penta are preempted by Title IX.

■ Nonetheless, even if Plaintiffs' claims against the school officials were not preempted, they would still fail as a matter of law. Supervisory liability under § 1983 "cannot be predicated on a *respondeat superior* theory." [88] A supervisor can be held liable "if (1) the behavior of his subordinates results in a constitutional violation, and (2) the supervisor's action or inaction was 'affirmatively linked' to that behavior in that it could be characterized as 'supervisory encouragement, condonation or acquiescence' or 'gross negligence amounting to deliberate indifference.' " [89]

In *Lipsett v. University of Puerto Rico*, the First Circuit held that summary judgment was inappropriate where the plaintiff, a female medical resident, told her supervisors that she was being sexually harassed by male residents and neither supervisor "took any steps whatsoever to investigate those allegations." [90] The First Circuit noted that the supervisors' inaction "could be found to be 'gross negligence amounting to deliberate indifference.' " [91]

■ Unlike the supervisory officials in *Lipsett,* Penta's actions were not grossly negligent. As shown above, the prior complaints did not provide Penta with actual

notice that D'Agostino was sexually harassing female students. Yet even if Penta *should* have known that D'Agostino was harassing female students, Penta's response did not constitute gross negligence amounting to deliberate indifference. When he learned of the parents' complaints, Penta met with the parents, addressed their concerns, and the situations improved. In addition, Penta's failure to file a complaint, as promised, does not indicate that he acquiesced to D'Agostino's alleged abusive conduct. Moreover, once Plaintiffs informed Penta and Donovan of their allegations, the supervisors took steps to investigate the situation.

For the foregoing reasons, the Arlington Defendants' motion for summary judgment on Plaintiffs' § 1983 claims against Donovan and the members of the Arlington School Committee (Count 18) and Penta (Count 14) is ALLOWED. Plaintiffs' motion for summary judgment on the same claims is DENIED.

#### 2. D'Agostino and Carey

Plaintiffs also advance § 1983 claims against D'Agostino and Carey.[92] This court believes that Plaintiffs' § 1983 claims against D'Agostino and Carey should be distinguished from their § 1983 actions against the other Arlington Defendants. The Seventh Circuit has held that when analyzing whether § 1983 claims are preempted by Title IX, it is "crucial" to distinguish between the defendants who actually committed the tortious acts from those who are "school officials responsible for the policy or practice that violates Title IX." [93]

---

**88.** *Seekamp v. Michaud,* 109 F.3d 802, 808 (1st Cir.1997).

**89.** *Id.* (brackets omitted) (citing *Lipsett v. Univ. of P.R.,* 864 F.2d 881, 902 (1st Cir. 1988)).

**90.** *Lipsett,* 864 F.2d at 907.

**91.** *Id.*

**92.** Am. Compl. ¶¶ 78–83, 93–98.

**93.** *Delgado v. Stegall,* 367 F.3d 668, 674 (7th Cir.2004).

The Seventh Circuit stated that there is "no hint" in the "background or history of Title IX" that Congress intended to supplant § 1983 when "relief is sought against a teacher or other nonmanagerial employee" who has sexually-harassed a student.[94] The Circuit held that "[t]he only possible effect of applying the sea-clammers doctrine to this case would be to immunize . . . [the teacher] from liability for his federal constitutional tort." [95] Moreover, if no school officials had actual knowledge of the teacher's sexual harassment, and a court determined that Title IX preempted the student's § 1983 claims against the teacher, then the student would be prevented from recovering damages from either the funding institution or the teacher. As a result, abused students would have no "federal remedies for sex discrimination by teachers of which the school lacked actual knowledge." [96]

■ Additionally, in *Lipsett*, the First Circuit held that if "a state official *directly* engaged in sexual harassment or sexual discrimination, he would, of course, be subject to section 1983 liability." [97] And in *Gebser*, the Supreme Court noted that their decision to limit federal funding recipients' damage exposure under Title IX did "not affect any right of recovery that an individual may have against a school district as a matter of state law or against the teacher in his individual capacity under state law or under 42 U.S.C. § 1983." [98] Consequently, this court holds that Plaintiffs' § 1983 claims based on Minor Plaintiff's substantive due process right to bodily integrity against D'Agostino (Count 6) and Carey (Count 10) are not preempted by Title IX.

D'Agostino argues that Plaintiffs cannot prevail on their § 1983 bodily integrity claim.[99] D'Agostino insists that courts have found "only forcible, overtly sexual acts such as rapes and sexual assaults of students" to shock the conscience.[100] D'Agostino maintains that her alleged abuse of Minor Plaintiff falls far below this standard.[101]

Courts, however, have found lesser conduct than overtly sexual acts, such as rapes, sufficient to shock the conscience. In *Hinkley v. Baker*, a kindergarten through third-grade teacher was accused of sexually harassing one of his students.[102] The defendant allegedly hugged and kissed the plaintiff's face, placed his hand inside the front of the plaintiff's shirt and felt the plaintiff's bare chest, ordered the plaintiff to rub his back, comb his hair, and made the plaintiff press her back and buttocks into his groin while sledding.[103] On these facts, the district judge refused to

94. *Id.* at 675.

95. *Id.* at 674.

96. *Id.* at 674–75.

97. *Lipsett v. Univ. of P.R.*, 864 F.2d 881, 901 (1st Cir.1988) (emphasis in original).

98. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 292, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998).

99. *See Collins v. City of Harker Heights*, 503 U.S. 115, 125–28, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) (To violate an individual's substantive due process right to bodily integrity, the government conduct must " 'shock the conscience' of federal judges").

100. D'Agostino's Mem. Supp. Mot. Summ. J. at 12.

101. *See, e.g., Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 726–27 (3d Cir.1989) (holding that a "teacher's sexual molestation of a student is an intrusion of the schoolchild's bodily integrity").

102. *Hinkley v. Baker*, 122 F.Supp.2d 48 (D.Me.2000).

103. *Id.* at 50.

dismiss the plaintiff's claim for violation of bodily integrity.[104]

In *Doe v. Beaumont I.S.D.*, a fifth-grade teacher was accused of sexually assaulting two fourth-grade students.[105] The defendant allegedly draped his hand over the students' shoulders and leaned his hand onto the their "chest area" and asked the students, "Do you 'like my car?' and 'Do you like me?' "[106] In *Beaumont*, the district judge preferred to "exercise an abundance of caution" and held that the evidence created a genuine issue of fact as to whether the defendant's conduct constituted an invasion of the students' bodily integrity.[107]

█ Here, D'Agostino allegedly exposed and touched Minor Plaintiff's lower abdomen during an unwanted ringworm examination. D'Agostino pressed Minor Plaintiff's abdomen in an attempt to force her to urinate. In addition, D'Agostino purportedly coerced and manipulated Minor Plaintiff to kiss, hug, and sit on her lap, and insisted on rolling a lint brush over Minor Plaintiff's chest. When viewing this evidence in a light most hospitable to Plaintiffs, this court believes that Plaintiffs have alleged sufficient facts to support their bodily integrity claim.

In making this decision, though, this court understands that the Due Process Clause should not be "interpreted to impose federal duties that are analogous to those traditionally imposed by state tort law."[108] But when analyzing D'Agostino's conduct, as alleged, a reasonable jury could find that it was "so inspired by malice or sadism ... that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience."[109] As such, D'Agostino's motion for summary judgment on Plaintiffs' § 1983 claim predicated on Minor Plaintiff's substantive due process right to bodily integrity (Count 6) is DENIED.[110] Plaintiffs' motion for summary judgment on the same claim is also DENIED because D'Agostino has not admitted sufficient facts for Plaintiffs to prevail as a matter of law.

█ To support their bodily integrity claim against Carey, Plaintiffs argue that Carey's close proximity to Minor Plaintiff during D'Agostino's ringworm examination makes Carey liable for sexual harassment, as if she initiated the examination. Plaintiffs also assert that Carey's failure to stop or try to prevent D'Agostino's alleged abuse makes her as liable as D'Agostino.[111] This court disagrees.

Plaintiffs do not allege that Carey abused Minor Plaintiff. In addition, Carey was not D'Agostino's supervisor and had no authority to take action to end D'Agostino's alleged harassment. Consequently, Carey's close proximity to Minor Plaintiff during D'Agostino's unwanted ringworm examination and failure to prevent or re-

---

104. *Id.* at 53–54.

105. *Doe v. Beaumont I.S.D.*, 8 F.Supp.2d 596 (E.D.Tex.1998).

106. *Id.* at 602, 606.

107. *Id.* at 606–07.

108. *Collins v. City of Harker Heights*, 503 U.S. 115, 128, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992).

109. *See Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 725 (6th Cir.1996) (citing *Webb*

*v. McCullough*, 828 F.2d 1151, 1158 (6th Cir. 1987)).

110. In her opposition to Plaintiffs' motion for summary judgment, D'Agostino argued that she was entitled to qualified immunity. In light of *Hinkley* and *Beaumont I.S.D.*, if D'Agostino had moved for summary judgment on this ground, it would likely have failed.

111. Pls.' Opp'n to Arlington Defs.' Mot. Summ. J. at 14.

port D'Agostino's abuse does not constitute behavior that shocks the conscience. The Arlington Defendant's motion for summary judgment on Plaintiffs' § 1983 claim against Carey (Count 10) is ALLOWED, and Plaintiffs' motion for summary judgment on the same claim is DENIED.

Plaintiffs also advance § 1983 claims against D'Agostino and Carey for violations of Title IX. Whether Plaintiffs can bring Title IX actions under § 1983 is another unsettled area of law. To address questions concerning Title IX, the First Circuit has applied "Title VII caselaw by analogy." [112] This court, therefore, will turn to Title VII cases dealing with the same matter.

Several federal courts have held that a plaintiff cannot advance a § 1983 claim based on only a violation of Title VII.[113] The Tenth Circuit, using Title VII precedent for guidance, determined that a "1983 action could not be predicated on a violation of Title IX itself." [114] This court concurs. D'Agostino's and the Arlington Defendants' motions for summary judgment as to Plaintiffs' § 1983 claims based on Title IX against D'Agostino (Count 6) and Carey (Count 10) are ALLOWED.

### C. Intentional Infliction of Emotional Distress

"To sustain a claim of intentional infliction of emotional distress, a plaintiff must show (1) that the defendant intended to cause, or should have known that his conduct would cause, emotional distress; (2) that the defendant's conduct was extreme and outrageous; (3) that the defendant's conduct caused the plaintiff's distress; and (4) that the plaintiff suffered severe distress." [115] The extreme and outrageous conduct "must be beyond all bounds of decency and . . . utterly intolerable in a civilized community." [116]

Plaintiffs claim that D'Agostino conducted an unwanted ringworm examination of Minor Plaintiff, pushed Minor Plaintiff's abdomen in an attempt to make her urinate, and sexually abused and harassed Minor Plaintiff. All of which, Plaintiffs allege, caused Minor Plaintiff to suffer emotional distress. As a result, Plaintiffs have raised a genuine issue of fact that D'Agostino intended to cause Minor Plaintiff emotional distress and that her acts constituted extreme and outrageous conduct. D'Agostino's motion for summary judgment on Plaintiffs' intentional infliction of emotional distress claim (Count 2) is DENIED, and Plaintiffs' motion for summary judgment on the same claim is DENIED because D'Agostino has not admitted sufficient facts for Plaintiffs to prevail as a matter of law.

Plaintiffs also contend that Carey should be held liable for intentional infliction of emotional distress because she was present when D'Agostino allegedly abused Minor Plaintiff. Plaintiffs argue that Carey can be held liable under the theory of joint venture because Carey "somehow participated in the venture to the extent

---

112. *Brown v. Hot, Sexy and Safer Prod., Inc.,* 68 F.3d 525, 540 (1st Cir.1995).

113. *Saulpaugh v. Monroe Comm. Hosp.,* 4 F.3d 134, 143 (2d Cir.1993); *Day v. Wayne County Bd. of Auditors,* 749 F.2d 1199, 1204–05 (6th Cir.1984); *Appling v. City of Brockton,* 649 F.Supp. 258, 260–61 (D.Mass.1986).

114. *Seamons v. Snow,* 84 F.3d 1226, 1234 n. 8 (10th Cir.1996) (citing *Starrett v. Wadley,*

876 F.2d 808, 813–14 (10th Cir.1989)). *But see Crawford v. Davis,* 109 F.3d 1281, 1284 (8th Cir.1997) (allowing plaintiff to bring a Title IX claim under § 1983).

115. *Sena v. Commonwealth,* 417 Mass. 250, 629 N.E.2d 986, 994 (Mass.1994).

116. *Id.* (internal quotation marks omitted) (alteration in original).

that she sought to have it succeed."[117] This court disagrees.

Even when applying the criminal joint venture theory by analogy, Carey prevails as a matter of law. Under the joint venture doctrine, a defendant's "mere presence at the commission of a wrongful act and even failure to take affirmative steps to prevent it, do not render a person liable as a joint venturer."[118] Here, Plaintiffs allege that Carey was present and failed to take any action to stop D'Agostino's harassment of Minor Plaintiff. As such, Carey's conduct mirrors the definition of why an individual is not a joint venturer. And Plaintiffs have not advanced any evidence showing that Carey intended to cause Minor Plaintiff emotional distress. The Arlington Defendants' motion for summary judgment on Plaintiffs' claim against Carey for intentional infliction of emotional distress (Count 8) is ALLOWED, and Plaintiffs' motion for summary judgment on the same claim is DENIED.

### D. *Negligence Claims*

Plaintiffs argue that Carey negligently aided and abetted D'Agostino's negligent and intentional conduct. Plaintiffs allege that the Arlington School Committee, the members of the Arlington School Committee, Donovan, and Penta breached their duty to "employ teachers of competent ability and good morals" by negligently investigating, hiring, and supervising D'Agostino.[119] In addition, Plaintiffs contend that all of the individual Arlington Defendants breached their "duty to exercise reasonable care to protect Minor Plaintiff from physical and emotional abuse."[120]

Under the Massachusetts Tort Claims Act ("MTCA"), "public employees are immune from personal liability for negligence, wrongful acts or omissions while acting within the scope of their employment."[121] The scope of employment requirement is not to be "construed restrictively."[122] A court should consider "whether the conduct in question is of the kind the employee is hired to perform, whether it occurs within authorized time and space limits, and whether it is motivated, at least in part, by a purpose to serve the employer."[123]

 First, Carey could not negligently aid and abet D'Agostino's harassment of Minor Plaintiff.[124] Next, Carey's alleged negligent omission of failing to protect Minor Plaintiff from D'Agostino's abuse is immunized by the MTCA. Taking steps to ensure a student's safety from abuse is within Carey's scope of employment, and any act by Carey to ensure Minor Plaintiff's safety would have been motivated, in part, to serve her employer.[125] The Arlington Defendants' motion for summary

---

117. Pls.' Opp'n to Arlington Defs.' Mot. Summ. J. at 22.

118. *Commonwealth v. Galford,* 413 Mass. 364, 597 N.E.2d 410, 416 n. 16 (Mass.1992) (quotation marks and brackets omitted).

119. Pls.' Opp'n to Arlington Defs. Mot. Summ. J. at 17–18.

120. Am. Compl. ¶¶ 89, 102, 119.

121. *Petricca v. City of Gardner,* 194 F.Supp.2d 1, 4 (D.Mass.2002) (citing Mass. Gen. Laws ch. 258, § 2).

122. *Clickner v. City of Lowell,* 422 Mass. 539, 663 N.E.2d 852, 855 (1996).

123. *Id.*

124. Aid and abet, "To assist or facilitate the commission of a crime, or to promote its accomplishment." Black's Law Dictionary 69 (7th ed.1999).

125. *See Clickner,* 663 N.E.2d at 855.

judgment on Plaintiffs' negligence claim against Carey (Count 9) is ALLOWED, and Plaintiffs' motion for summary judgment on the same claim is DENIED.

■ The alleged acts of negligently hiring, investigating, and supervising D'Agostino by the Arlington School Committee, the members of the Arlington School Committee, Donovan, and Penta are also within the scope of their employment and immunized by the MTCA. Furthermore, any negligent omission by these supervisory officials to protect Minor Plaintiff falls within the purview of the MTCA. Consequently, the Arlington Defendants' motion for summary judgment on Plaintiffs' negligence claims against the Arlington School Committee, the members of the Arlington School Committee, and Donovan (Count 16) and Penta (Count 12) is ALLOWED, and Plaintiffs' motion for summary judgment on the same claims is DENIED.

■ Plaintiffs also argue that D'Agostino breached her heightened duty to ensure her students' well-being by "negligently inflicting emotional distress" on Minor Plaintiff by repeatedly using Minor Plaintiff "as an 'exhibit' in classroom lectures on science, health and hygiene concerning teeth brushing, bathing, matching underwear and bras, wearing bras, washing hands after using the bathroom, and hangnails." [126] The Supreme Judicial Court, however, has held that "[a] negligence claim which is premised on the same acts which are contended to be the basis of an intentional sexual misconduct claim is not legally supportable." [127] And the Court noted that a negligence claim could not be based on lesser examples of sexual misconduct that were isolated from the context in which they occurred.[128] Here, many of the events supporting Plaintiffs' negligence claim are lesser examples of acts that Plaintiffs have labeled as sexually abusive.[129] Moreover, D'Agostino's acts, which Plaintiffs do not identify as sexually abusive, such as using Minor Plaintiff as an exhibit for washing hands, cannot support a claim for negligent infliction of emotional distress.[130] Accordingly, D'Agostino's motion for summary judgment on Plaintiffs' negligence claim (Count 3) is ALLOWED, and Plaintiffs' motion for summary judgment on the same claim is DENIED.

E. *Mass. Gen. Laws ch. 119, section 51A*

Plaintiffs allege that D'Agostino and all the Arlington Defendants breached their duty under Massachusetts General Laws ("Mass.Gen.Laws") ch. 119, section 51A to report D'Agostino's abuse of Minor Plaintiff to the Department of Social Services

126. Pls.' Opp'n to D'Agostino's Mot. Summ. J. at 23–24.

127. *Doe v. Liberty Mut. Ins. Co.,* 423 Mass. 366, 667 N.E.2d 1149, 1152 (1996). Although this case concerns an insurance company's duty to defend, its reasoning provides guidance here.

128. *Id.*

129. *See* Pls.' Opp'n to D'Agostino's Mot. Summ. J. at 7–10.

130. *See Sullivan v. Boston Gas Co.,* 414 Mass. 129, 605 N.E.2d 805 (1993). The cases Plaintiffs cite to support their theory that teachers have an increased duty to protect their students' well-being stand for the proposition that under Pennsylvania law teachers or school officials, in certain situations, may have a duty to protect students from harm "occurring as the result of a third person," *see Stoneking v. Bradford Area Sch. Dist.,* 882 F.2d 720, 723 (3d Cir.1989), and that a teacher's punishment "which clearly exceeds reasonable discipline may amount to a substantive due process violation." *See Waechter v. Sch. Dist. No. 14–030,* 773 F.Supp. 1005, 1007–09 (W.D.Mich.1991) (excessive punishment of a handicapped student that led to his death). These cases do not impose a heightened negligent infliction of emotional distress standard on teachers.

("DSS").[131] D'Agostino and the Arlington Defendants argue that Plaintiffs' claim must fail because there is no private right of action under section 51A and that DSS conducted an investigation and found no reasonable cause to believe that D'Agostino neglected or abused Minor Plaintiff.[132]

Under section 51A, mandatory reporters, who "have reasonable cause to believe that a child ... is suffering physical or emotional injury resulting from abuse," are required to "immediately report such condition to the department."[133] And "[a]ny such person so required to make such ... reports who fails to do so shall be punished by a fine of not more than one thousand dollars."[134]

■■■■■ D'Agostino and the Arlington Defendants are correct that section 51A does not provide a private right of action against mandatory reporters who fail to report an incident of child abuse.[135] Plaintiffs section 51A claim, however, appears to be grounded in negligence.[136] As such, Plaintiffs' section 51A claim is simply a recasting of Plaintiffs' other negligence claims alleging that Defendants failed to protect Minor Plaintiff. And like the other negligence claims, Plaintiffs' section 51A action is barred by the MTCA.[137] Consequently, the Arlington Defendants' and D'Agostino's motions for summary judgment on Plaintiffs' Mass. Gen. Laws ch. 119, section 51A claim (Count 21) are ALLOWED, and Plaintiffs' motion for summary judgment on the same claim is DENIED.

### F. The Arlington School Committee's Liability under the MTCA

■■■■■ Plaintiffs maintain that the Arlington School Committee is liable for the negligent actions of D'Agostino, Carey, Penta, and the members of the Arlington School Committee.[138] Under the MTCA, "[p]ublic employers shall be liable for injury ... caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment."[139] Public employers, however, are not liable for a public employee's intentional torts.[140] The Arlington

---

**131.** Am. Compl. ¶¶ 137–40.

**132.** D'Agostino's Mem. Supp. Mot. Summ. J. at 17–19; Arlington Defs.' Mem. Supp. Mot. Summ. J. at 20–22.

**133.** Mass. Gen. Laws ch. 119, § 51A. Teachers, educational administrators, "or any person paid to care for or work with a child" are considered mandatory reporters. *See id.*

**134.** *Id.*

**135.** *Loffredo v. Ctr. for Addictive Behaviors,* 426 Mass. 541, 689 N.E.2d 799, 801 (1998) ("Many of our decisions support the proposition that a clear legislative intent is necessary to infer a private cause of action from a statute.").

**136.** Pls.' Opp'n to D'Agostino's Mot. Summ. J. at 21–23; Pls.' Opp'n to Arlington Defs.' Mot. Summ. J. at 19–21.

**137.** *See Mattingly v. Casey,* 24 Mass.App.Ct. 452, 509 N.E.2d 1220, 1222 (Mass.App.Ct. 1987) (finding that a plaintiff's negligence claim based on Mass. Gen. Laws ch. 119, section 51A was not governed by the MTCA only because the alleged negligence occurred before the MTCA was passed).

**138.** Pls.' Opp'n to Arlington Defs.' Mot. Summ. J. at 18. In their Motion to Dismiss, which this court *denied without prejudice,* the Arlington Defendants contested Plaintiffs' designation of the Arlington School Committee as D'Agostino's and Penta's public employer. Defs.' Mot. to Dismiss [# 16] at 5–7. The Arlington Defendants also argued that Plaintiffs' presentment failed to meet the requirements under the MTCA. *Id.* The Arlington Defendants, however, have not raised these issues in their motion for summary judgment. As a result, this court will not address them.

**139.** Mass. Gen. Laws ch. 258, § 2.

**140.** Mass. Gen. Laws ch. 258, § 10(c).

School Committee, therefore, cannot be held liable for D'Agostino's intentional torts.

■ In addition, under section 10(j) of the MTCA, public employers cannot be held liable for "any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer." In *Armstrong v. Lamy*, Judge Keeton found that section 10(j) barred the plaintiffs' negligence claims against the public employer, which were based on city employees' failure to "train, supervise, regulate, control, or correct" a teacher who sexually abused a student, because these claims were "based on the failure to prevent or mitigate a harm, rather than participation in the initial injury-causing circumstance." [141]

Subsequently, in *Brum v. Town of Dartmouth*, the Supreme Judicial Court found that section 10(j) barred a suit based on the school's failure to adopt adequate security policies that would have allowed the school to prevent the perpetrators from entering the school, attacking, and killing the plaintiff's son. [142] The Court held that "the principal purpose of § 10(j) is to preclude liability for failures to prevent or diminish harm, including harm brought about by the wrongful act of a third party." [143]

In *Canty v. Old Rochester Regional School District*, Chief Judge Young also analyzed whether a school district could be held "liable for its agents' negligent failure to 'prevent or diminish' the sexual misconduct" of a coach. [144] Chief Judge Young held that section 10(j) barred the plaintiff's claims against the school district based on his finding that Judge Keeton's interpretation of section 10(j) was supported by the Supreme Judicial Court's holding in *Brum.* [145]

Here, Plaintiffs' negligence claims against the Arlington School Committee, for the most part, are based on the school officials' failure to supervise D'Agostino or properly investigate prior complaints. This court holds that these claims are barred by section 10(j) because they are "based on the failure to prevent or mitigate a harm, rather than participation in the initial injury-causing circumstance." [146]

■ Plaintiffs' negligent hiring claim, though, is not barred by section 10(j). A jury could reasonably find that by negligently hiring D'Agostino, the Arlington Defendants participated in the "injury-causing circumstance" that caused Minor Plaintiff's harm. [147] But other than their conclusory allegations, Plaintiffs have offered no evidence to support their claim that the Arlington Defendants negligently hired D'Agostino. Consequently, this court ALLOWS the Arlington Defendants' motion for summary judgment on Plaintiffs' claim against the Arlington School

**141.** *Armstrong v. Lamy*, 938 F.Supp. 1018, 1043–44 (D.Mass.1996) (internal quotation marks omitted).

**142.** *Brum v. Town of Dartmouth*, 428 Mass. 684, 704 N.E.2d 1147, 1152–55 (1999).

**143.** *Id.* at 1155.

**144.** *Canty v. Old Rochester Reg'l Sch. Dist.*, 54 F.Supp.2d 66, 71 (D.Mass.1999).

**145.** *Id.*

**146.** *See Lamy*, 938 F.Supp. at 1044.

**147.** *See Lamy*, 938 F.Supp. at 1045–46 (holding that section 10(j) does not bar a negligent hiring claim); *McConnell v. Dooling*, No. 941503, 1995 WL 809504, at *2 (Mass.Super. Ct. June 7, 1995) (finding that a jury could reasonably find that a Housing Authority's negligent hiring of a guard constituted "risk-creating conduct" under section 10(j)).

Committee under the MTCA (Count 19), and DENIES Plaintiffs' motion for summary judgment on the same claim.

### G. *Mass. Gen. Laws ch. 76, section 5*

■ Plaintiffs claim that D'Agostino's alleged abusive acts violated Minor Plaintiff's rights under Mass. Gen. Laws ch. 76, section 5.[148] Plaintiffs also claim that Penta, Donovan, the members of the Arlington School Committee, and the Arlington School Committee violated section 5 by failing to protect Minor Plaintiff. In relevant part, section 5 reads, "[n]o person shall be excluded from or discriminated against in admission to a public school of any town, or in obtaining the advantages, privileges and courses of study of such public school on account of race, color, sex, religion, national origin or sexual orientation." [149]

■ In *Leonard v. School Committee of Attleboro,* however, the Supreme Judicial Court held that Mass. Gen. Laws ch. 76, section 16 provides the exclusive remedy for a pupil seeking damages in tort, when a member of the school committee, principal, or teacher unlawfully excludes a pupil from a public school.[150] In addition, under section 16, a pupil may recover from the Town in tort.[151] Plaintiffs, therefore, appear to have brought their suit under the wrong statute and against the wrong defendant.

Yet even if Plaintiffs brought a claim against the Town of Arlington under Mass. Gen. Laws ch. 76, section 16, the Arlington Defendants argue that it would be barred by section 10(j) of the MTCA.[152] This court agrees. A claim that a student's "ability to maximize his public education" was limited "by the School's negligent failure to take action to remedy the harmful conduct of third parties ... is precisely the type of claim from which the Legislature intended to immunize public entities pursuant to G.L. c. 258, § 10(j)." [153] As a result, D'Agostino's and the Arlington Defendants' motions for summary judgment on Plaintiffs' claims pursuant Mass. Gen. Laws ch. 76, section 5 against D'Agostino (Count 5), Penta (Count 13), and Donovan, the members of the Arlington School Committee, and the Arlington School Committee (Count 17) are ALLOWED, and Plaintiffs' motion for summary judgment on the same claims is DENIED.

### H. *Loss of Consortium*

Plaintiffs have advanced loss of consortium claims against D'Agostino, Carey, and Penta.[154] Plaintiffs' loss of consortium claims against Penta and Carey, however, are predicated on negligent acts that are immunized by the MTCA. As such, Plaintiffs loss of consortium claims against Penta and Carey are also barred by the MTCA.[155] Accordingly, the Arlington Defendants' motion for summary judgment

---

**148.** Am. Compl. ¶¶ 75–77, 106–09, 123–25.

**149.** Mass. Gen. Laws ch. 76, § 5.

**150.** *Leonard v. School Comm. of Attleboro,* 349 Mass. 704, 212 N.E.2d 468, 470–71 (1965).

**151.** Mass. Gen. Laws ch. 76, § 16.

**152.** *See* Arlington Defs.' Mem. Supp. Mot. Summ. J. at 19–20.

**153.** *Martin v. Town of Wilmington,* No. 0005650, 2001 WL 915259, at *3 (Mass.Su-

per.Ct. May 23, 2001) (holding that a plaintiff's claim that his son was denied the right to a public education because the school failed to prevent and protect his son from harassment by other students was barred by section 10(j) of the MTCA).

**154.** Am. Compl. ¶¶ 84–85, 99–100, 116–17 (citing Mass. Gen. Laws ch. 231, section 85X).

**155.** *See Ringuette v. City of Fall River,* 888 F.Supp. 258, 263 (D.Mass.1995).

on Plaintiffs' loss of consortium claims against Penta (Count 15) and Carey (Count 11) is ALLOWED, and Plaintiffs' motion for summary judgment on the same claims is DENIED.

Plaintiffs' loss of consortium claim against D'Agostino is not barred. Plaintiffs' allegations raise a genuine issue of fact whether D'Agostino committed intentional torts against Minor Plaintiff, and the MTCA does not immunize D'Agostino's liability for her intentional torts.[156] D'Agostino's motion for summary judgment on Plaintiff's loss of consortium claim (Count 7) is DENIED. Plaintiffs' motion for summary judgment on the same claim is also DENIED because D'Agostino has not admitted sufficient facts for Plaintiffs to prevail as a matter of law.

## I. *MCRA Claim*

██ A direct violation of an individual's rights standing alone does not violate the Massachusetts Civil Rights Act ("MCRA").[157] "If, however, direct action also includes threats against, or intimidation or coercion of, a particular individual or individuals, liability under the MCRA can be established, and will be established if such threats, intimidation, or coercion interfered with that individual's exercise or enjoyment of rights secured by law."[158]

██ Plaintiffs argue that D'Agostino violated the MCRA.[159] Plaintiffs have established a genuine issue of material fact that D'Agostino's alleged harassment constituted an invasion of Minor Plaintiff's bodily integrity. The question that remains is whether Plaintiffs have produced sufficient evidence that would allow a reasonable jury to find that D'Agostino used threats, intimidation, or coercion to interfere with Minor Plaintiff's enjoyment of this right. This court believes they have.

The Supreme Judicial Court has defined intimidation as "putting in fear for the purpose of compelling or deterring conduct," and defined coercion to mean "the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done."[160] Plaintiffs have alleged that D'Agostino pressed Minor Plaintiff's abdomen in an attempt to make her urinate and "coerced" Minor Plaintiff to hug, kiss, and allow D'Agostino to conduct an unwanted ringworm examination.

D'Agostino also contends that Plaintiffs' MCRA claim is preempted by Mass. Gen. Laws ch. 76, section 5 and/or Title IX. D'Agostino cites *Mouradian v. General Electric Co.* to support her argument.[161] In *Mouradian,* the Massachusetts Appeals Court held that an employee was preempted from raising a MCRA claim against his employer because the alleged wrong could have been vindicated under Mass. Gen. Laws ch. 151B.[162]

A MCRA claim, however, is viable against an employer, where a ch. 151B claim is not available.[163] Here, Plaintiffs'

---

156. *See Spring v. Geriatric Auth. of Holyoke,* 394 Mass. 274, 475 N.E.2d 727, 734 n. 9 (1985); *see also Agis v. Howard Johnson Co.,* 371 Mass. 140, 355 N.E.2d 315, 319–20 (1976) (holding that physical or psychological injury can provide the basis of a consortium action).

157. *Planned Parenthood League of Mass., Inc. v. Blake,* 417 Mass. 467, 631 N.E.2d 985, 989 (1994).

158. *Id.*

159. Am. Compl. ¶¶ 72–74.

160. *Planned Parenthood League of Mass., Inc.,* 631 N.E.2d at 990.

161. D'Agostino's Mem. Supp. Mot. Summ. J. at 16–17.

162. *Mouradian v. Gen. Elec. Co.,* 23 Mass. App.Ct. 538, 503 N.E.2d 1318, 1321 (1987).

163. *O'Connell v. Chasdi,* 400 Mass. 686, 511 N.E.2d 349, 353 n. 9 (1987).

Mass. Gen. Laws ch. 76, section 5 is not available against D'Agostino, and as a result, cannot preempt their MCRA claim. Moreover, as explained above in the § 1983 analysis, this court believes that it is inappropriate to find that Title IX preempts state law claims against a teacher, who allegedly performed the tortious acts. Consequently, D'Agostino's motion for summary judgment on Plaintiffs' Mass. Gen. Laws ch. 12, section 11(I) claim (Count 4) is DENIED. Plaintiffs' motion for summary judgment on the same claim is also DENIED because D'Agostino has not admitted sufficient facts for Plaintiffs to prevail as a matter of law.

### J. *Assault and Battery*

D'Agostino has moved for summary judgment on Plaintiffs' assault and battery claim. D'Agostino argues that Minor Plaintiff consented to all of her alleged offensive contacts.[164] Plaintiffs, however, have raised evidence that D'Agostino's conduct towards Minor Plaintiff was unwanted. Accordingly, D'Agostino's Motion for summary judgment on Plaintiffs' assault and battery claim (Count 1) is DENIED. Plaintiffs' motion for summary judgment on the same claim is also DENIED.

AN ORDER WILL ISSUE.

---

**164.** D'Agostino's Mem. Supp. Mot. Summ. J. at 14–15.